UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DEBORAH CLARK, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

MACY'S CREDIT AND CUSTOMER SERVICES, INC.,

    Defendant.
_____/

CASE NO.: 6:17-cv-692-ORL-31-TBS

**DEMAND FOR JURY TRIAL**

FILED 4/17/17

## CLASS ACTION COMPLAINT

1. "Robocalls" are the #1 consumer complaint in America today.

2. In 2016, there were almost 4,000,000 complaints reported to the FCC and FTC concerning robocalls, 3,857,627 to be exact.[1] In 2015 and 2014 the robocall complaints reached 2,636,477 and 1,949,603 respectively.[2] It is important to recognize these are only the number of individuals that complained to these agencies. The number of people that have been victimized by robocalling abuse could be close to 100,000,000 in the last 3 years.

---

[1] https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf., https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e

[2] https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf.; https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf., https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

3. In 1991 Senator Hollings called robocalls the "scourge of modern civilization" and despite the penalties put in place over 26 years ago robocall abuse continues to skyrocket. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization", and they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. Plaintiff, Deborah Clark, individually and on behalf of all others similarly situated, alleges Macy's Credit and Customer Services, Inc., ("Macy's" and/or "Defendant") robocalled her numerous times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

5. In 2014, the Federal Trade Commission (FTC) reported 1,678,433 complaints about robocalls occurring after the consumer had already requested that the company stop calling. Federal Trade Commission, National Do Not Call Registry Data Book, FY 2014 (Nov. 2014). Since this report, the number of complaints has increased.

6. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." Senate Hearing at 5.

7. The TCPA was enacted to prevent companies like Macy's from invading American citizens' privacy and prevent illegal robocalls.

2

8. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

10. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

11. The alleged violations described in the Complaint while Plaintiff was in Orange County, Florida.

## FACTUAL ALLEGATIONS

12. Plaintiff is a natural person, and citizen of the State of Florida, residing in Orange County, Florida.

13. Plaintiff is a "consumer" as defined in Florida Statute 559.55(8).

14. Plaintiff is an "alleged debtor."

15. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

16. Defendant is a corporation with its principal place of business located at 4705 Duke Dr., Mason, OH 45040 and which conducts business in the State of Florida through its registered agent, Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.

17. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

18. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (407) 470-2257.

19. Plaintiff was the "called party" during each phone call subject to this lawsuit.

20. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

21. The alleged debt belonged to Plaintiff's daughter, Rhonda Mercer, arising out of a credit card transaction with Defendant on a credit card account that was primarily used for Ms. Mercer's personal, family, or household purposes.

22. On or about November 1, 2014, Plaintiff received a telephone call to her aforementioned cellular telephone number from Macy's Credit and Customer Services, Inc. seeking to recover a credit card debt from the Plaintiff that Plaintiff did not owe.

23. Defendant told Plaintiff she owed the above reference debt and that she needed to pay it.

24. Immediately upon receipt of the calls, after November 1, 2014, Plaintiff answered a call from Macy's Credit and Customer Services, Inc. and explained that she "doesn't owe any

money," "you have the wrong phone number," and that she feels harassed by all of the calls and demanded that Defendant stop calling her aforementioned cellular telephone number.

25. In or about November of 2015, during the aforementioned phone conversation with Defendant's agent/representative, Plaintiff expressly revoked any express consent Macy's Credit and Customer Services, Inc. may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

26. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

27. Defendant made at least one call to (407) 470-2257.

28. Defendant made at least one call to (407) 470-2257 using an "automatic telephone dialing system" (ATDS).

29. Defendant made at least ten (10) calls to (407) 470-2257.

30. Defendant made at least ten (10) calls to (407) 470-2257 using an ATDS.

31. Defendant made at least fifty (50) calls to (407) 470-2257.

32. Defendant made at least fifty (50) calls to (407) 470-2257 using an ATDS.

33. Each call the Defendant made to (407) 470-2257 in the last four years was made using an ATDS.

34. Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

35. Each call the Defendant made to the Plaintiff was made using an ATDS which has the capacity to store or produce telephone numbers to be called, without human intervention,

using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

36. Furthermore, many of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

37. Defendant has stipulated in another lawsuit that the telephone system used to call the Plaintiff was in fact an ATDS.

38. Plaintiff repeatedly requested the Defendant to stop calling her cell phone however the Defendant continued to make calls

39. Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored.

40. Defendant has recorded at least one conversation with the Plaintiff

41. Defendant has recorded numerous conversations with the Plaintiff.

42. Defendant has made approximately fifty (50) calls to Plaintiff's aforementioned cellular telephone number from in or about November of 2014 until today, which will be established exactly once Defendant turns over their dialer records.

43. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

44. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

45. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

6

46. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

47. Defendant's phone calls harmed Plaintiff by wasting her time.

48. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

49. Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

50. Defendant's, corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

51. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

52. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

53. In the last 3 years, the Defendant has had 3,800 complaints reported to the Better Business Bureau (BBB), of which 1,550 of those complaints are classified as being related to "Billing/Collection Issues".[3]

---

[3] http://www.bbb.org/cincinnati/business-reviews/department-stores/macy-s-in-mason-oh-3002362/.

54. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.

55. Defendant never had the Plaintiff's express consent for placement of telephone calls to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

56. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

57. Defendant violated the TCPA with respect to the Plaintiff.

58. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I

### (Violation of the TCPA)

59. Plaintiff incorporates Paragraphs one (1) through fifty-eight (58).

60. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after she revoked his consent to being called by them using an ATDS or pre-recorded voice.

61. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to being called by them using an ATDS or pre-recorded voice.

62. Macy's Credit and Customer Services, Inc. repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff and the other members of the class

using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

63. As a result of Macy's Credit and Customer Services, Inc.'s illegal conduct, Plaintiff and the members of the class suffered actual damages and, under § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

64. Plaintiff and class members are also entitled to, and do, seek injunctive relief prohibiting Macy's Credit and Customer Services, Inc.'s violations of the TCPA in the future.

## CLASS ALLEGATIONS

65. Plaintiff restates each of the allegations in all other paragraphs as if fully stated herein.

66. Plaintiff, individually and on behalf of all others similarly situated, brings the above claims on behalf of a Class.

67. In this case, Plaintiff seeks to certify classes and sub-classes, subject to amendment, as follows:

68. Macy's TCPA Class consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendant placed a non-emergency telephone call (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) where Macy's did not obtain the cellular telephone number from the consumer who was called.

And the following sub-class:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendant placed a non-emergency telephone call (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) after that person had instructed Macy's to cease calls to that number.

9

69. Excluded from the Macy's TCPA Class and sub-class are any calls that had already been released as part of a prior release or judgment.

70. Defendants has caused the Class actual harm, not only because the Class was subjected to the aggravation that necessarily accompanies these calls, but also because said members frequently have to pay their cell phone service providers for the receipt of such calls.

71. These calls are also an intrusion upon seclusion, trespassed on their telephones, diminish cellular battery life, and waste of Plaintiff's and the class member's time.

72. Plaintiff represents and is a member of the Class. Excluded from the Class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

73. Plaintiff is presently unaware of the exact number of members in the Class, but based upon the size and national scope of Defendant's business, Plaintiff reasonably believes that the class members' number at a minimum is in the thousands based on the use of software to make the calls and Defendant's track history with failing to comply with the TCPA.

74. Plaintiff and all members of the Class have been harmed by Defendants' actions.

75. This Class Action Complaint seeks money damages and injunctive relief.

76. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

77. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class can be easily identified through records maintained by Defendants.

78. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

   a. Whether Defendants engaged in a pattern of using an ATDS to place calls to cellular telephones;

   b. Whether Defendants' conduct was knowing or willful; and

   c. Whether Defendants' actions violated the TCPA. As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class.

80. Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiff does not have an interest that is antagonistic to any member of the Class.

81. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

82. A class action is the superior method for the fair and efficient adjudication of this controversy.

83. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA is small.

84. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

11

85. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate.

86. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and favor of the Class, and against Defendant for:

    a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

    b. A declaration that Defendant's practices described herein violate the Florida Consumer Collection Practices Act, Fla. Stat. §559.55;

    c. An injunction requiring Defendant not to call any third parties or numbers that were skip traced to ensure that Plaintiff is not called now or when Plaintiff obtains additional telephone numbers in the future;

    d. An injunction requiring Defendant not to call any third parties or numbers that were listed as references by Defendant's customers;

    e. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any third parties or numbers that were skip traced to ensure that Plaintiff is not called in the future;

    f. An injunction requiring Defendant not to call any third parties or numbers that were skip traced to ensure that class members are not called if they obtain additional telephone numbers in the future;

    g. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any third parties or numbers that were skip traced to ensure that class members are not called in the future;

    h. An award of actual damages in an amount to be proven at trial;

    i. An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

j. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

k. An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

l. Attorney's fees, litigation expenses and costs of suit; and

m. Such further and other relief the Court deems reasonable and just.

n. Plaintiff, individually and on behalf of all others similarly situated, demands trial by jury.

Respectfully submitted,

*s/William "Billy" Peerce Howard*

William "Billy" Peerce Howard, Esquire
Florida Bar No. 0103330
Billy@TheConsumerProtectionFirm.com
Amanda J. Allen, Esquire
Florida Bar No. 098228
Amanda@TheConsumerProtectionFirm.com
The Consumer Protection Firm, PLLC
210-A South MacDill Avenue
Tampa, FL 33609
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
*Attorneys for Plaintiff*