**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

Ronda Mercer, as Personal Representative      Case No. 6:17-cv-00692-WWB-EJK
of The Estate of Deborah Denise Clark
a/k/a Deborah D. Clark, Deceased, , individually
and on behalf of all others similarly situated,

       Plaintiff,

v.

FDS BANK and DEPARTMENT STORES
NATIONAL BANK,

       Defendants.

_____ /

FDS BANK and DEPARTMENT STORES
NATIONAL BANK,

       Third-Party Plaintiffs,

v.

RONDA MERCER,

       Third-Party Defendant.

_____ /


**RENEWED JOINT MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF THE LITIGATION, MEDIATION AND SETTLEMENT....................................................................................................1

II.    OVERVIEW OF THE SETTLEMENT & SUMMARY OF LITIGATION.........................3

A.    Procedural Background .........................................................................................3

B.    Discovery ..............................................................................................................3

C.    The Parties Mediation...........................................................................................4

D.    The Settlement ......................................................................................................4

III.   SUMMARY OF THE PROPOSED SETTLEMENT ........................................................5

     A.    Class Definition. The Settlement Class is defined as follows: ....................................5

     B.    Structure of the Settlement Amount ...........................................................................5

     C.    Individual Settlement Class Member Benefits.............................................................5

     D.    Compensation for the Class Representative .................................................................6

     E.    Payment of Attorneys' Fees and Expenses.................................................................6

     F.    Release ........................................................................................................................7

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED...........................7

A.    The Numerosity Element Is Satisfied..................................................................11

B.    The Commonality Element Is Satisfied...............................................................11

C.    Plaintiff's Claims Are Typical of the Claims of the Settlement Class.**Error! Bookmark not defined.**

D.    Plaintiff and Her Counsel Are Adequate Representatives...................................12

E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ........13

V.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............14

VI.    THE PROPOSED CLASS NOTICE SHOULD BE APPROVED...................................19

VII.   THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING..............................20

VIII.  DEFENDANTS DO NOT OBJECT TO PRELIMINARY APPROVAL OF THE SETTLEMENT CLASS..................................................................................................21

IX.    SUGGESTED SCHEDULE...........................................................................................21

X.     CONCLUSION ..............................................................................................................22

## I.   INTRODUCTION AND SUMMARY OF THE LITIGATION, MEDIATION AND SETTLEMENT

The parties respectfully move the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Deborah Clark, and Defendants FDS Bank and Department Stores National Bank concerning Plaintiff's claims arising under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227., which is attached as *Appendix 1*.

As this Court is aware, Ms. Clark passed away on June 23, 2020 and Ronda Mercer, as Personal Representative of The Estate of Deborah Denise Clark a/k/a Deborah D. Clark, Deceased has been substituted[1].

Pursuant to the Court's January 26, 2021 Order, this amended motion for preliminary approval is being filed with the proper substituted plaintiff.

Defendants dispute legal and factual entitlement to recovery or class certification, but join in the request for certification of a settlement class and the relief sought herein.

Plaintiff submits for the reasons set forth below and set forth in the September 2, 2020 Report and Recommendation (ECF 268), preliminary approval should be granted.  Plaintiff would note that the notice should be revised to reflect the change in Eleventh Circuit law that prohibits incentive awards.  *See Johnson v. NPAS Solutions, LLC*, No. 18-12344 (11th Cir. Sept. 17, 2020).  In short, Plaintiff will only request an incentive award at final approval if the Eleventh Circuit grants the motion for en banc review of *Johnson*.

---

[1] TCPA claims are remedial, survive a plaintiff's death under federal law and the personal representative may substitute as the class representative. *See Parchman v. SLM Corp.*, 896 F.3d 728, 738-41 (6th Cir. 2018)(Holding TCPA claim is remedial, survives the plaintiff's passing and the representative may serve as the class plaintiff); *see also Hooters of Augusta, Inc. v. Am. Glob. Ins. Co.*, 272 F. Supp. 2d 1365, 1375 (S.D. Ga. 2003) aff'd, 157 F. App'x 201 (11th Cir. 2005) (holding that Section 227(b)(3) is remedial because one of its purposes is to "redress harms to individuals who are forced to absorb the costs associated with receiving unsolicited faxes" and, additionally, "any award of actual or statutory damages issues to the harmed individual or entity, not to a third party"); *see also Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 779 (11th Cir. 2011) (holding that the TCPA's treble damages provision is remedial); *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (holding that the TCPA's $500 statutory damages provision is remedial).

1

**Summary of Claims**

Plaintiff has asserted that the "[v]oluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). Plaintiff argues that Congress found that "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394, 2394-95 (codified at 47 U.S.C. § 227).

The TCPA generally makes it unlawful to make any call using an ATDS or an artificial or prerecorded voice to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA creates a private right of action for persons affected by violations and provides for statutory damages in the amount of $500 per violation, which the Court may treble if a violation is willful. 47 U.S.C. §227(b)(3).

Pursuant to the TCPA, Ms. Clark alleged she received automated robocalls from Defendants to collect monies allegedly in connection to a Macy's or Bloomingdales credit card account even though Plaintiff was not the person that Defendants were trying to reach. Ms. Clark contended these calls violated the TCPA because they were made to third parties that were designated as wrong numbers or made after a request to stop calling such that there would not be consent for these calls. Defendants have vigorously denied these allegations and the related claims for relief. The proposed Settlement would resolve all claims in this action.[2]

---

[2] Capitalized terms in this motion are meant to have the same meaning as in the Settlement Agreement, unless otherwise noted.

97584

## II.   <u>OVERVIEW OF THE SETTLEMENT & SUMMARY OF LITIGATION</u>

### A.  Procedural Background

On September 9, 2016, Ms. Clark filed this matter as a single-plaintiff suit pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), Case No. 6:16-cv-01582-CEM-DAB ("Clark I Action"). Ms. Clark filed an Amended Class Action Complaint on November 18, 2016. (Clark I Action, Dkt 17.) Ms. Clark moved to voluntarily dismiss the Clark I Action on March 27, 2017, as granted by this Court on March 28, 2017.  (Clark I Action, Doc. Nos. 30 and 31.)

Class Representative refiled her Class Action Complaint as the instant matter on April 17, 2017, similarly alleging claims for violation of the TCPA, Case No. 6:17-cv-00692-WWB-EJK ("the Action."). Ms. Clark filed a Motion for Class Certification on July 17, 2017.

After briefing a contested Motion to Amend, Ms. Clark filed an Amended Complaint on March 13, 2018. On December 7, 2018, Defendant filed a motion to dismiss for lack of prosecution because Ms. Clark suffered serious medical conditions that required her to reschedule her deposition. The Court held a hearing on this motion on January 18, 2019. (Dkt 142) At the request of Defendant and at the Court's Order, Ms. Clark underwent a medical examination to determine if she was capable of prosecuting the case as Class Representative. (Dkt 151) Defendants' medical examiner determined Ms. Clark was capable of continuing with the prosecution of her case. After lengthy and contentious discovery, Defendants filed a Motion for Partial Summary Judgment, and Ms. Clark filed her Motion for Class Certification under seal on December 4, 2019.

### B.  Discovery

Discovery in this case has been thorough and contentious, requiring the court's intervention on numerous occasions after full briefing by both parties and numerous discovery

97584

hearings. Numerous motions for protective order, motions to show cause, motions to strike, and motions to compel were filed, and both parties hired experts to assist in the discovery process.

In addition to the contentious discovery with Defendant, Ms. Clark required the court's assistance with resolving disputes with third parties from whom Ms. Clark had sought information. (Dkts 244-245).

### C.    The Parties Mediation

On December 2, 2019, the parties engaged in a daylong mediation with Rodney Max who is an accomplished and well-regarded mediator. While the parties did not reach an agreement at the mediation, the Parties continued to work with Mr. Max until a settlement in principle was reached in February 2020. Significant negotiations regarding the specifics and timing of the settlement terms, identification of the class, notice, the settlement agreement, and release continued until this filing of this Motion.

### D.    The Settlement

Under the Agreement, Defendants will pay One Million, Five Hundred Thousand Dollars ($1,500,000.00) into a non-reversionary Settlement Fund. The Settlement Fund will be divided among all Settlement Class Members who submit a timely approved claim, after payment of the costs of notice and administration and the court-approved attorneys' fee and class representative incentive awards. None of the Settlement Fund will revert back to Defendants.

All told, this settlement provides the Settlement Class with a significant portion of the statutory damages available under TCPA and, on a per-class member basis, it exceeds several other TCPA class action settlements approved in this District. Given the hurdles facing the Settlement Class in this litigation, the results achieved are reasonable in light of the defenses. Both counsel agree that the settlement is fair and reasonable considering the facts and the applicable law.

97584

The parties therefore move to: (a) conditionally certify the Settlement Class; (b) appoint Ronda Mercer, as Personal Representative of The Estate of Deborah Denise Clark a/k/a Deborah D. Clark, Deceased as class representative; (c) appoint Keith Keogh of Keogh Law, Ltd. and William Howard as class counsel, (d) enter an order granting preliminary approval of the Settlement and plan for giving notice of it to the Settlement Class, and setting this matter for a fairness hearing; and (e) grant such additional relief as deemed just.  Defendant does not oppose these requests.

### III.   SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed Settlement follow:

**A.    Class Definition**. The Settlement Class[3] is defined as follows:

> All persons in the United States whose cellular telephone number, at any time on or after July 22, 2015, through January 31, 2020, Defendants (or either of their agents or affiliates) placed a call for debt collection purposes (estimated to be 247,000 persons) in connection with a Macy's and/or Bloomindale's credit card account using an artificial or prerecorded voice and/or using substantially the same systems that were used to call Plaintiff's cellular telephone number, where the phone number called belonged to the owner or customary user of that cellphone who did not provide the number to Defendants and/or is not a person who had consented to receiving calls at that cellular telephone number.

**B.     Structure of the Settlement Amount.** The Agreement provides Defendants will pay One Million, Five Hundred Thousand Dollars ($1,500,000.00) into a non-reversionary Settlement Fund. *Appendix 1* at ¶1.36.

**C.     Individual Settlement Class Member Benefits.** A Settlement Class Member who submits a timely claim form will receive $50 if they provide proof of the call (which includes documentary proof or a simple declaration stating they never provided consent for the

---

[3] The following are excluded from the Settlement Class: (i) any Judge or Magistrate presiding over the Action and members of their staffs or immediate family members, (ii) Defendants and their officers and directors; and (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class.

97584

call at issue), or $7 if no proof is attached.   The settlement also provides a *pro rata* share of the net settlement if the amount of the funds available to the class either exceeds or is less than the amount if each class member receives their respective $50 or $7.  Plaintiff estimates[4] the pro rata share for each class member who submits a valid claim would equal $62 at a five percent claim rate and $31 at a ten percent claim rate.

  **D. Compensation for the Class Representative.** Subject to Court approval, Plaintiff shall apply for an incentive award not to exceed twenty thousand dollars ($20,000).[5]  As noted above, any incentive award will be contingent upon the Eleventh Circuit allowing incentive awards by vacating or overruling *Johnson*.  The Agreement does not contain any "clear sailing" provision as to incentive award demonstrating that the amount now sought was not a factor in agreeing to this Agreement.   As will be explained in the final approval motion, Mrs. Clark substantively participated in this case including communicating with counsel, participating in discovery, underwent a medical examination and was deposed.  *See Appendix 2, Declaration of Deborah Clark*. In fact, Mrs. Clark continued to participate in the prosecution of this case despite serious medical difficulties.  *Id*.  Thus her estate should be entitled to an incentive award if the Eleventh Circuit allows it.

  **E. Payment of Attorneys' Fees and Expenses.** Plaintiff's counsel will petition the Court for an award of attorneys' fees of one-third of the Maximum Settlement Amount, plus

---

[4] The estimate is based on administration costs at $200,000, requested attorney fees of one third ($500,000) and expenses of $30,000 and the requested incentive award of $20,000, which would leave a Settlement Fund balance of $750,000, assuming the incentive award stands, to be distributed to the claimants.

[5] This is consistent with incentive awards in other cases. *See*, *e.g.*, *Cooper v. NelNet, Inc.*, 14-cv-314-RBD-DAB, Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive award in TCPA case); *Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, *25-*26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive awards), *citing Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff).

6

expenses, and the notice to the Settlement Class will inform the Settlement Class of such and counsel's soon to be filed fee petition will be posted on the settlement website.

  **F.**  **Release**. In exchange for the relief described above, the release is applicable to all Settlement Class Members and releases any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, state or federal law, whether by Constitution, statute, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown (including "Unknown Claims"), suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, that have been, could have been, or in the future might be asserted that arise out of, relate to, or are otherwise in connection with the actual or alleged use by Released Parties and/or their agents and/or affiliates, of an artificial or prerecorded voice and/or of any automatic telephone dialing system (to the fullest extent that those terms are used, defined or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., relevant regulatory or administrative promulgations and case law) to make collection calls to collect on Macy's-branded and/or Bloomingdale's-branded credit card accounts, including, but not limited to, claims under or for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., and any other state or federal statutory or common law claim arising from the use of automatic telephone dialing systems and/or an artificial or prerecorded voice which have accrued at any point from the beginning of time through the date of Preliminary Approval of the Agreement. *See Appendix 1* at §1.28.

  **IV.**  **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

  Plaintiff asserts that prior to granting preliminary approval of a class action settlement, the Court should confirm that the proposed settlement class is a proper class for settlement

97584

purposes. *See Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1313-14 (S.D. Fla. 2005) (internal quotations omitted).

Certification of a settlement class is appropriate where the Court finds that the proposed settlement class meets the elements of Federal Rule 23(a), and one element of Federal Rule 23(b). *See Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 693 (S.D. Fla. 2013). The elements of Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4); *see also Collins*, 290 F.R.D. at 693. The element of Rule 23(b) at issue here requires that common questions of law or fact predominate, and that a class action be a superior method of resolving the claims at issue. Fed. R. Civ. P. 23(b)(3); *see also Collins*, 290 F.R.D. at 693. However, because class certification is being proposed as part of a settlement, the Rule 23(b)(3) inquiry is relaxed as it relates to case manageability because the settlement obviates the need for a trial. *See Amchem*, 521 U.S. at 620.

Numerous trial and appellate courts have examined issue under the TCPA and have recognized that the TCPA can, under the right circumstances, be suitable for class certification. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("'Class certification is normal in litigation under [the TCPA], because the main questions …. are common to all recipients.'") (quoting *Ira Holtzman, C.P.A., & Assosc. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)); *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 656 (4th Cir. 2019); *see also, e.g., Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041-42 (9th Cir. 2012) (affirming certification of TCPA class); *see also Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1127 (6th Cir. 2016) (reversing the denial of class certification in a TCPA case).

97584

As observed by the Fourth Circuit:

> Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer*, 925 F.3d at 656.

Recently, the Eleventh Circuit recognized TCPA actions can be appropriately certified. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1275 (11th Cir. 2019).[6] See also *Grant v. Regal Auto. Grp., Inc.*, 2020 U.S. Dist. LEXIS 91897 (M.D. Fla. May 27, 2020); *Northrup v. Innovative Health Ins. Ptnrs., LLC*, 329 F.R.D. 443, 447 (M.D. Fla. 2019); *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702-03 (S.D. Fla. 2018); *Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 674 (S.D. Fla. 2018).

Courts have also certificated classes in "wrong number" TCPA cases. *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018)(certified a wrong number TCPA class in the face of defendant's objection that the "wrong number" notations in its records did not necessarily mean what they said); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016)( certified a wrong number class and rejected the argument "that every record marked as a wrong number may not actually have been a wrong number," finding that "these matters can be efficiently addressed" and "that, at this point in the litigation, while it is not required prior to certification, the Plaintiff's proposed method of identifying potential class members is adequate

---

[6] Because the district court did not consider how to resolve which class members actually had a right to bring their claims, the Eleventh Circuit reversed class certification and remanded. *See id.* at 1276. By contrast, here the parties have agreed on a methodology for providing an overinclusive notice, which will notify as many class members as is practicable, with supplemental publication notice if appropriate.

97584

for class certification."); *Lavigne v. First Cmty. Bancshares, Inc.*, 2018 U.S. Dist. LEXIS 94055, at *18-19 (D.N.M. June 5, 2018) (certifying wrong number class despite defendants' argument "that a call could be coded 'Bad/Wrong Number' for many reasons" because "a number of courts have rejected this theory in 'Wrong Number' cases, under similar factual circumstances, at the class certification stage"); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 301-02 (N.D. Cal. 2017) (certifying wrong number class, reasoning "several district courts have deemed commonality and predominance satisfied in TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as 'wrong number' in defendant's call log databases 'may not have actually been a wrong number'"); *Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303, 308, 311 (S.D. Cal. 2015) (certifying wrong number class based on defendant's records, holding ascertainability satisfied "because class members likely can be determined by objective criteria based on defendant's business records and the class members will likely be able to identify whether they received prerecorded calls from defendant," further holding predominance satisfied as class definition was limited to wrong numbers, which plaintiff correctly argued is "evidence suggesting defendant did not obtain express consent"); *see also Reid v. I.C. Sys.*, 2017 U.S. Dist. LEXIS 43770, *4-5 (D. Ariz. 2017) (certifying settlement class of persons "whose cellular telephone number was . . . coded as a wrong number" in defendant's records); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1039 (S.D. Cal. 2015) (certifying settlement class defined in terms of persons called "without consent" and "persons whose cellular telephone numbers were marked with a 'wrong number' code in Defendant's database").

Defendants have pointed out that courts have also denied class certification in TCPA wrong number cases. *See, i.e., Morgan v Adventist Health System et al.*, 6:18-cv-01342-WWB-DCI (M.D. Fl. 2020). However, the parties believe that the settlement here avoids the problems

97584

presented in these cases, and constitutes a fair, adequate, and reasonable resolution of this matter. *See Amchem*, 521 U.S. at 620.

### A. The Numerosity Element Is Satisfied for Settlement Purposes

The first Rule 23(a) element requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Collins*, 290 F.R.D. at 694. To meet this element, "plaintiffs need not prove the exact size of the proposed class, but rather need demonstrate only that the number is exceedingly large, and joinder impracticable." *Id.* (citations omitted). "As a general rule, a group of more than forty satisfies the numerosity requirement." *Id.*

Here, the parties have agreed for settlement purposes that the settlement class would satisfy the numerosity requirement.  Plaintiff's expert estimated that there are roughly 247,000 persons who received an unauthorized call from Defendant as defined in the settlement agreement. *See Appendix 1* at §1.33.  Obviously, it would be impracticable to join hundreds of thousands of people as parties in one lawsuit.

### B. The Commonality Element Is Satisfied for Settlement Purposes

The parties agree that for settlement purposes there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). See *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 313 (S.D. Fla. 2001); *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004) (finding that the commonality requirement is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members") (internal quotation omitted).

All Settlement Class Members share the common issue of whether the system used to call them is an automatic telephone dialing system ("ATDS") under the TCPA. While the parties disagree on the answer to this question, the parties agree that this is a common question for

97584

settlement purposes. *See Palm Beach Golf*, 311 F.R.D. at 699 ("facts necessary to establish liability relate to Defendant's common course of conduct"); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2014) (holding in TCPA case "the legal questions that the instant matter presents will be common to all class members"); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) ("Whether the provision of a phone number on admissions paperwork equates to express consent is a question common to all class members, because . . . all class members will prevail or lose together, making this another common issue to the class.").

### C. The Typicality Element is Satisfied for Settlement Purposes

The third Rule 23(a) element requires that the class representative's claims be typical of the claims of the putative class members. Fed. R. Civ. P. 23(a)(3). "The Supreme Court has recognized '[t]he commonality and typicality requirements of Rule 23(a) tend to merge.'" *Collins*, 290 F.R.D. at 697 (citation omitted). "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted).

In this case, the parties agree for settlement purposes that Plaintiff was subjected to the same pattern or practice as every other class member—*i.e.* Defendants placed debt collection robocalls regarding a Macy's and/or Bloomingdales account to cellular telephone numbers where the owner or customary user of that cellphone who did not provide the number to Defendants and/or is not a person who had consented to receiving calls at that cellular telephone number.

### D. Plaintiff and Her Counsel Are Adequate Representatives for Settlement Purposes

The fourth and final Rule 23(a) element requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor mandates: (1)

97584

that the class representative possess no interests antagonistic to the settlement class, and (2) competent class counsel. *See Fabricant*, 202 F.R.D. at 314-15 (*citing Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987)).

Here, the parties agree for settlement purposes that Plaintiff's and the Settlement Class Members' interests are aligned because they both stand to recover statutory damages if Plaintiff proves Defendants violated the TCPA. *See Appendix 2, Declaration of Deborah Clark* at ¶¶ 6, 15. Ms. Mercer has now stepped forward to stand in Ms. Clark's shoes and has attested that she will look out for the interests of the class, her interests are aliagned with the class and is adequate. *See Appendix 5, Declaration of Ms. Mercer.*

Moreover, Plaintiff is represented by counsel with extensive experience litigating TCPA claims and class actions under the TCPA. *See Appendix 3 Declaration of Keith Keogh* at ¶¶ 7-9, 21-24; *Appendix 4 Declaration of William Howard* at ¶¶3, 11-13. Thus, the adequacy element is met for the purposes of settlement, and Plaintiff and her counsel should be appointed as Class Representative and Class Counsel for settlement purposes pursuant to Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

### E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3), for Settlement Purposes

Once the four elements of subsection (a) are met, Rule 23 also requires that the case meet one of the three elements of subsection (b). Rule 23(b)(3) provides that a class action can be maintained if the questions of law or fact common to class members predominate over any questions affecting only individuals, and if a class action is a superior method for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3). .

Here, the common question presented affects the class members' ability to establish liability and obtain relief in that proving whether Defendants had consent establishes liability for

97584

the class.   For settlement purposes, common issues will predominate. *Abdeljali*, supra (in certifying a wrong number TCPA class, any speculative or hypothetical individualized issues regarding "prior express consent" do not defeat predominance where the class can be identified by defendant's records).  306 F.R.D. at 311;  *see also Johnson*, 315 F.R.D. at 502-03 (holding predominance satisfied by wrong number TCPA class, finding that any possible individual issues "can be efficiently addressed").

A class action settlement would be superior to any other method available to fairly and efficiently adjudicate the Settlement Class Members' claims. *See Bush v. Calloway Consol. Group River City, Inc.*, 2012 U.S. Dist. LEXIS 40450, *33 (M.D. Fla. Mar. 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions…"). Without a class action settlement, it is likely that members of the putative Settlement Class could not feasibly recover damages.  A Settlement Class is a superior method of resolving those claims, particularly where the settlement claims administrator will individually review all claims to determine eligibility for recovery. *See Amchem,* 521 U.S. at 615.

Although this case meets the superiority requirement as it is ordinarily applied, it must be noted that the superiority analysis is relaxed here because class certification is being proposed as part of a settlement, and thus trial management considerations are not a factor. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citations omitted).

## V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule 23 provides "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The procedure for review of a proposed class action settlement is a well-established two-

97584

step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also* Carlos F. Herr, *Annotated Manual for Complex Litigation,* § 21.632 (4th ed. 2004).

The first step is a preliminary, pre-notification determination whether the settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd Ed.)); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This is not a fairness determination; its purpose, rather, is to ascertain whether there are grounds to notify the class members of the settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling Parties. *See Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd,* 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

97584

Although the approval of a class action settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the Parties. *See Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 at *9 (11th Cir. Dec. 2, 2015) (unpublished) ("a district court may also rely upon the judgment of experienced counsel for the parties. Indeed, absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"), *quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Warren*, 693 F.Supp. at 1054 ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation").

Ultimately, a class action settlement should be approved if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now,* 2002 WL 1162422 at *4. When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In considering whether the proposed Settlement is "fair, adequate, and reasonable," the following factors are often considered: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986; *see also In re Sunbeam*, 176 F. Supp. 2d at 1329. Finally, in considering the preliminary approval issue, courts need not "reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

16

97584

Here, the proposed Settlement is fair, adequate and reasonable, and well "within the range of possible approval." This is demonstrated by the amount of monetary relief made available to the Settlement Class, and the fact that the agreement was the result of hard fought, arms' length negotiations by experienced counsel conducted through a seasoned third-party mediator.

The monetary relief secured on behalf of the Settlement Class is substantial in light of the fact that it came after this Court denied certification in a substantially similar TCPA class action in *Morgan v Adventist Health System et al.*, 6:18-cv-01342-WWB-DCI (M.D. Fl. 2020). Although Plaintiff does not concede *Morgan* is applicable, if the Court would have applied *Morgan* to this case, it is likely the Court would have denied certification and the class would receive nothing.

Each Settlement Class Member who submits a timely claim form will receive $50 or $7, but as pointed out above Plaintiff estimates each class member will take a pro rata share[7] equal to equal $62 at a five percent claim rate and $31 at a ten percent claim rate.

This compares favorably to a potential statutory damages recovery of $500 per call allowed by TCPA (and up to treble if willful), assuming all liability and damages claims could be pleaded and proven, which Defendant vigorously contested throughout this litigation. Finally, the monetary relief is also reasonable as compared to other TCPA class settlements approved in this district and elsewhere. *See Wojcik v. Buffalo Bills, Inc.*, Case No. 8:12-cv-2414-T-23TBM (M.D. Fla. Aug. 25, 2014) (class claimants to receive $57.50-$75.00 gift card); *In re*

---

[7] Sections 1.5 and 1.6 of the Agreement provide if the total amount of Approved Claims is less than the amount of the Settlement Fund (after deducting all Settlement Costs per ¶ 2.1), the Settlement Administrator shall make a pro rata increase to the amount of each Approved Claim, not to exceed $1,500,000 and if the total amount of Approved Claims submitted under ¶¶ 2.2-2.4 exceeds the amount of the Settlement Fund (after deducting all Settlement Costs per ¶ 2.1), then each Approved Claim shall be reduced on a pro rata basis such that the total aggregate amount of Approved Claims plus the Settlement Costs does not exceed $1,500,000.00.

97584

*Enhanced Recovery Company, LLC Telephone Consumer Protection Act Litigation*, Case No. 6:13-MD-2398-orl-37GJK (M.D. Fla.) (class claimants to receive injunctive relief and no monetary recovery).[8]

The Settlement is the product of substantial and active arms' length negotiations that took place over years. Based on the discovery undertaken, including Plaintiff's expert report, Plaintiff's counsel is confident in the strength of the claims alleged in this action and Plaintiff's chance of success at the class certification stage and at trial. However, Defendants are equally confident that a class would not be certified absent a settlement and that they have a strong position on the merits. Litigation is inherently unpredictable, Defendants are represented by competent and formidable counsel, and Plaintiff must clear a number of major hurdles to secure relief for the class in the absence of settlement (including contested class certification proceedings and trial), and the outcomes of those proceedings are never guaranteed.[9]

Indeed, Plaintiff and the Settlement Class Members face significant risks. This includes the possibility that the Court may deny a contested class certification motion as discussed above and, of course, the possibility that the Court grants Defendants' motion for partial summary judgment.

---

[8] *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

[9] *See Appendix 3* (Decl. of Keith J. Keogh) at ¶15-18.

18

In the end, when the strengths of the case are weighed against the legal and factual obstacles present, and the complexity of class action practice, there should be no doubt that the proposed Settlement is in the best interest of Settlement Class Members.[10] And, given the value of this Settlement – Plaintiff expects no significant opposition to it by any Settlement Class Member. In its totality, this Settlement is well within the range of reasonableness and should be preliminarily approved by this Court.

## VI.     THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

The Agreement includes notice procedures designed to directly reach each settlement class member as is practicable and commercially reasonable. *Appendix 1* at ¶3. Because the names and addresses associated with the unique cellular telephone numbers identified are not known, the Settlement Agreement provides the Class Administrator will perform a reverse lookup from the phone number after the Parties identify the phone numbers for putative class members.

After the contact information is obtained, the Claims Administrator shall cause a notice (*Appendix 1* at Exhibit B) to be sent via First Class mail to every Settlement Class Member for which address information is available, to advise them about the Settlement and direct them to the Website where they can obtain additional information about it, including how to comment on the settlement or opt out of it, and how to make a claim. *Appendix 1* at ¶3.1.4. The Settlement Agreement allows Settlement Class Members to make claims via mail or on-line. *Id.* at ¶2.3.

Second, the Claims Administrator will establish a settlement website that supplements the mail notice with comprehensive information about the Settlement (*Appendix 1* at ¶3.1.5) a claim form that Settlement Class Members can use to make a claim and a procedure for filing claims online (*Appendix 1* at Exhibit A), plus a copy of the latest Complaint, the Agreement, the

---

[10] *See Appendix 3* (Decl. of Keith J. Keogh) at ¶19.

97584

Preliminary Settlement Approval Order for the Settlement Class Members to review. *Id.* The notice posted on the site provides Settlement Class Members with a detailed explanation of their options, to enable them to make an informed decision. (*Appendix 1* at Exhibit C). The Settlement Administrator will also establish and oversee a toll-free phone number for Settlement Class Members to contact to ask questions and submit claims via the phone. If the Settlement Administrator determines that publication notice is necessary due to concerns about the identification of putative class members, the Settlement Agreement provides that publication notice may be done after consultation with the Parties.

A mailed notice combined with a Website for further information is a commonly approved method for giving notice in class settlements. *See, e.g., See Greco v. Ginn Dev. Co., LLC,* 2015 U.S. App. LEXIS 20867 at *15 (11th Cir. Dec. 2, 2015) (unpublished) ("all material facts were available to class members because a full copy of the settlement agreement, and the release, were available on a website referenced in the Notice."); *Collins v. Erin Capital Management, LLC,* No. 12-cv-22839-CMA (S.D. Fla. Dec. 20, 2013) at ECF No. 133, ¶ 5; *Guarisma v. Adcahb Medical Coverages, Inc.,* No. 13-cv-21016-FAM (S.D. Fla. Mar. 2, 2015) at ECF No. 91, ¶11; *Soto v. The Gallup Organization, Inc.,* No. 13-cv-61747-MGC (S.D. Fla. June 6, 2015) at ECF No. 79, ¶9; *De Los Santos v. Millward Brown, Inc.,* No. 13-cv-80670-DPG (S.D. Fla. Feb. 10, 2015) at ECF No. 77, ¶ 11; *Curry v. AvMed, Inc.,* No. 10-cv-24513, 2014 U.S. Dist. LEXIS 48485 at *3 (S.D. Fla. Feb. 28, 2014); *Cooper v. Nelnet, Inc.,* 14-cv-00314-RBD (M.D. Fla. Feb. 26, 2015) at ECF No. 72, ¶10; and *Legg v. E-Z Rent A Car, Inc.,* No. 14-cv-01716-PGB (M.D. Fla. May 28, 2015) at ECF No. 64, ¶10.

In short, the notice plan here should be approved.

## VII.    THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING

After adequate notice is given to the Settlement Class and the government as required by

97584

28 U.S.C. §1715, a fairness hearing should be held for the Court to confirm that the Settlement is fair, reasonable and adequate. *See*, *e.g.*, *Bennett*, 737 F.2d at 985; *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011).

## VIII.   DEFENDANTS DO NOT OBJECT TO PRELIMINARY APPROVAL OF THE SETTLEMENT CLASS

As noted above, Defendants disagree Plaintiff can satisfy the elements for a litigation class under Rule 23 or that certification of any class would be appropriate here if the parties proceeded with litigation.  Indeed, Defendants have vigorously opposed the prior motions for class certification motion by Plaintiff.   Nonetheless, following extensive negotiations, Defendants have agreed to the terms of the Settlement and do not object to the certification of the Settlement Class for settlement purposes only.

## IX.   SUGGESTED SCHEDULE

Based on the events that need to take place between the granting of preliminary approval and final approval that are described in the proposed preliminary approval order (Exhibit 4 to *Appendix 1*), including obtaining contact information from the telephone companies, Plaintiff proposes the general scheduling outline below for evaluating and concluding this Settlement.

| | |
|---|---|
| _____, 2021 [120 days from order granting preliminary approval] | Deadline to Identify Class Members |
| _____, 2021 [45 days after the date of the identification of putative class members (165 days from order of preliminary approval)] | Deadline for notice to be provided in accordance with the Agreement and this Order (Notice Deadline) |
| _____, 2021 [30 days after the Notice Deadline] | Deadline for filing of Plaintiff's Motion for Attorneys' Fees and Costs and Service Award |
| _____, 2021 [60 days after Notice Deadline (225 days from order of preliminary approval) ] | Deadline to file objections or submit requests for exclusion (Opt-Out and Objection Deadline) |
| _____, 2021 [60 days after Notice Deadline | Deadline for  Class Members to Submit a Claim Form (Claim Period) |

97584

| (225 days from order of preliminary approval) ] | |
|---|---|
| _____, 2021<br>[30 days after the Opt-Out and Objection Deadline] | Deadline for Parties to file the following:<br>  (1) List of persons who made timely and proper<br>     requests for exclusion (under seal);<br>  (2) Proof of Class Notice; and<br>  (3) Motion and memorandum in support of final<br>     approval, including responses to any objections. |
| _____, 2021 at ____ _.m.<br>[No earlier than 284 days from the entry of this Order] | Final Approval Hearing |

The reason Plaintiff proposes 45 days from the identification of putative class members to send notice to the Settlement Class is due to the time needed for the Defendants to obtain third-party data and for the database experts to identify the class. The Agreement provides for a **four-month** deadline to obtain the data, subject to any necessary extensions. This is necessary due to the inherent difficulties in identifying a class of wrong numbers, obtaining the third-party data, as well as the added difficulties brought by the COVID-19 pandemic that is affecting the Defendants and the third-party owners of the third-party data. In response to the pandemic, Defendants, and the third-party data owners, have had to close stores and furlough employees, including former in-house counsel who appeared in this case. These events combined with remote-work requirement have made, and will continue to make, the identification of putative class members more difficult. Thus, the four-month deadline is warranted.

## X.   CONCLUSION

For the foregoing reasons, the Parties respectfully requests the Court (1) certify the proposed settlement class, (2) appoint Ronda Mercer, as Personal Representative of The Estate of Deborah Denise Clark a/k/a Deborah D. Clark, Deceased (3) appoint Mr. Keogh, Mr. Howard and Ms. Allen as class counsel, (4) preliminarily approve the proposed settlement and notice

22

97584

plan, and set the matter for a fairness hearing, by entering the proposed order attached as Exhibit D to *Appendix 1*, and (5) grant such other and further relief as deemed just.

Respectfully submitted by:

s/Keith J. Keogh
Keith J. Keogh
Florida Bar No. 126335
E-Mail: Keith@KeoghLaw.com
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093

William Peerce Howard
Florida Bar No. 0103330
Billy@TheConsumerProectionFirm.com
Amanda J. Allen
Florida Bar No. 098288
Amanda@TheConsumerProectionFirm.com
The Consumer Protection Firm, PLLC
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500

*Attorneys for Plaintiff*

s/Frank A. Zacherl
Frank A. Zacherl
Florida Bar No. 0868094
fzacherl@shutts.com
SHUTTS & BOWEN LLP
200 S. Biscayne Blvd., Suite 4100
Miami, Florida 33131
Telephone: (305) 358-6300
Facsimile:  (305) 381-9982

-and-

Ryan C. Reinert
Florida Bar No. 81989
rreinert@shutts.com
SHUTTS & BOWEN LLP
4301 W. Boy Scout Blvd., Suite 300
Tampa, Florida 33607
Telephone: (813) 229-8900
Facsimile:  (813) 229-8901
*Counsel for Defendants/Third Party Plaintiffs*

23

97584

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on February 5, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Keith J. Keogh*
Keith J. Keogh