## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

Ronda Mercer, as Personal Representative of The Estate of Deborah Denise Clark a/k/a Deborah D. Clark, Deceased, individually and on behalf of all others similarly situated,

Case No. 6:17-cv-00692-WWB-EJK

     Plaintiff,

v.

FDS BANK and DEPARTMENT STORES NATIONAL BANK,

     Defendants.

_____/

FDS BANK and DEPARTMENT STORES NATIONAL BANK,

     Third-Party Plaintiffs,

v.

RONDA MERCER,

     Third-Party Defendant.

_____/

## PLAINTIFF'S MOTION FOR
## AWARD OF ATTORNEYS' FEES AND EXPENSES, AND
## CLASS REPRESENTATIVE SERVICE AWARD

Pursuant to the parties' settlement agreement and the Court's order granting preliminary approval of the settlement, which directed Plaintiff to file this motion by March 14, 2022, and in support of the relief requested, Plaintiff states:

## INTRODUCTION

1

Plaintiff, Ronda Mercer[1], individually and as representative of the Class, submits this motion and memorandum in support of the proposed attorneys' fee and expense award and class representative service award as part of the nationwide class action settlement ("Settlement") reached between Plaintiff and Defendants FDS Bank and Department Stores National Bank.  *See Appendix 1.* Plaintiff's and the class members' claims arise under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

Under the Settlement, Defendants will pay One Million Five Hundred Thousand Dollars ($1,500,000.00) into a Settlement Fund into a non-reversionary Settlement Fund. The Settlement Fund will be divided among all Settlement Class Members who submit a timely approved claim, after payment of the costs of notice and administration and the court-approved attorneys' fee and class representative incentive awards. None of the Settlement Fund will revert back to Defendants.

The monetary relief secured on behalf of the Settlement Class is substantial. Plaintiff estimates the pro rata share for each class member who submits a valid claim will be approximately[2] $62 at a five percent claim rate and $31 at a ten percent claim rate. It is worth noting that the agreement provides Class Member who submits a timely claim form will receive $50 if they provide proof of the call (which includes documentary proof or a simple declaration stating they never provided consent for the call at issue), or $7 if

---

[1] Ms. Clark passed away on June 23, 2020 and Ronda Mercer, as Personal Representative of The Estate of Deborah Denise Clark a/k/a Deborah D. Clark, Deceased has been substituted.

[2] The estimate is based on administration costs at $200,000, requested attorney fees of one third ($500,000) and expenses of $30,000 and the requested incentive award of $20,000, which would leave a Settlement Fund balance of $750,000, assuming the incentive award stands, to be distributed to the claimants.

no proof is attached, but a also provides a *pro rata* share of the net settlement if the amount of the funds available to the class either exceeds or is less than the amount if each class member receives their respective $50 or $7.  Thus Plaintiff's counsels estimate the pro rata clause will trigger such that everyone will receive the same amount of $62.

**A.**    Consistent with Eleventh Circuit law, which holds attorney fee awards from a common fund must be determined using the "percentage of the fund" method, Plaintiff moves the Court for a fee award equal to one-third of the Settlement Fund, *i.e.* $500,000, plus $23,500.40 to reimburse counsel for the out-of-pocket expenses they incurred litigating the case. Plaintiff also moves the Court for a $20,000 service award if permitted by law,[3] which is well deserved, as this case required substantial involvement of Ms. Clark including communicating with counsel, participating in discovery, undergoing a medical examination and her and Ms. Mercer were deposed.   *See Appendix 2, Declaration of Deborah Clark*. In fact, Mrs. Clark continued to participate in the prosecution of this case despite serious medical difficulties.  *Id*.  Thus, her estate should be entitled to an incentive award if the Eleventh Circuit allows it.

Consistent with Federal Rule 23(h), the notice of the Settlement sent to the Class informs Class members of the exact amount of the proposed attorneys' fees award, both as a percentage and dollar amount. Specifically, it advised the Class the fee sought would be up to one third of the settlement fund, not to exceed $500,000, plus reasonable expenses. *See https://www.departmentstorestcpasettlement.com/page/faq* (Last visited

---

[3] As explained in the motion for preliminary approval and below, Plaintiff's request for a class representative service award depends on the final outcome of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), which held class representative incentive awards are no longer allowed, but which is considering a petition for rehearing *en banc*.

March 14, 2022)("How will class counsel be paid"). Likewise, the class was expressly advised Plaintiff would seek a service award of up to $20,000 if allowed by the Eleventh Circuit. *Id.* Finally this brief will be posted to the settlement website to allow any class member to review well prior to the claim and objection deadline.

As further explained below, the proposed attorneys' fee, expense, and service awards are typical and well within the range of reasonableness.[4] Accordingly, Plaintiff hereby moves for an attorneys' fee award of $500,000, plus $23,500.40 in expenses, as well as a $20,000 service award to Plaintiff to the extent permitted by law.

## I.  SUMMARY OF THE PROCEEDINGS

### A.  THE TCPA

The "[v]oluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012); *see also Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020) ("The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone."). Specifically, Congress found that "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. Law 102-243, 105 Stat. 2394, 2394-95, Sec. 2(12), (13) (codified at 47 U.S.C. § 227).

---

[4] Plaintiff will inform the Court if any objections are made (as the Class has until December 20, 2021 to object), and respond to them. Yet whether the objections are zero or a small number, "a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).

Accordingly, the TCPA makes it unlawful to make any call using an ATDS or an artificial or prerecorded voice to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Furthermore, the TCPA gives recipients of calls violating this ban the right to sue for statutory damages of $500 per violation, which the Court may treble if a violation is shown to be willful. 47 U.S.C. §227(b)(3)(B), (C).

As explained in more detail below, the Settlement was not achieved until after a substantial amount of work, including extensive written and oral discovery, expert discovery, class certification and summary judgment briefing, Daubert briefing to strike Plaintiff's expert, which this Court denied, and a full-day mediation. Even then, the case did not settle until after the mediation, and months of negotiations to work out the terms of the Settlement agreement.  Even after all of that work, Class Counsel had to substitute Ms. Mercer after the passing of Ms. Clark, which included additional briefing on whether TCPA claims were remedial to allow the substation and additional briefing for preliminary approval.

### B. THE LITIGATION

This class action has been pending for over five and half years.  On September 9, 2016, Ms. Clark filed this matter as a single-plaintiff suit pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), Case No. 6:16-cv-01582-CEM-DAB ("Clark I Action"). Ms. Clark filed an Amended Class Action Complaint on November 18, 2016. (Clark I Action, Dkt 17.) Ms. Clark moved to voluntarily dismiss the

Clark I Action on March 27, 2017, as granted by this Court on March 28, 2017.  (Clark I Action, Doc. Nos. 30 and 31.)

Class Representative refiled her Class Action Complaint as the instant matter on April 17, 2017, similarly alleging claims for violation of the TCPA, Case No. 6:17-cv-00692-WWB-EJK ("the Action."). Ms. Clark filed a Motion for Class Certification on July 17, 2017.

After briefing a contested Motion to Amend, Ms. Clark filed an Amended Complaint on March 13, 2018. On December 7, 2018, Defendant filed a motion to dismiss for lack of prosecution because Ms. Clark suffered serious medical conditions that required her to reschedule her deposition. The Court held a hearing on this motion on January 18, 2019. (Dkt 142) At the request of Defendant and at the Court's Order, Ms. Clark underwent a medical examination to determine if she was capable of prosecuting the case as Class Representative. (Dkt 151) Defendants' medical examiner determined Ms. Clark was capable of continuing with the prosecution of her case. After lengthy and contentious discovery, Defendants filed a Motion for Partial Summary Judgment, and Ms. Clark filed her Motion for Class Certification under seal on December 4, 2019.

**Discovery**

Discovery in this case has been thorough and contentious, requiring the court's intervention on numerous occasions after full briefing by both parties and numerous discovery hearings. Numerous motions for protective order, motions to show cause, motions to strike, and motions to compel were filed, and both parties hired experts to assist in the discovery process who also attended some of the hearings to provide testimony as described in more detail below. (Docs 77, 80, 81, 82, 84, 89, 91, 92, 94,

102, 103, 119, 123, 124, 189-191, 222, 223).  Defendants were ultimately ordered to produce significant amount of data of call records as well as sanctioned for lack of compliance.

In addition, not only was Ms. Clark deposed, but she was ordered to undergo a medical examination as part of Defendants attack of her adequacy to determine if she was healthy enough to represent the class as explained above.

A hearing was held on August 9, 2018 on Plaintiff's Motion to Compel Discovery Responses and Plaintiff's Second Amended Notices of Taking Deposition of corporate Representatives.  The primary issue raised by Plaintiff's counsel was for Plaintiff to obtain the underlying class data in the form of Defendants' account notes.

Defendants' counsel noted at the August 9, 2018 hearing that the account notes at issue cannot be electronically searched and must be manually printed and scanned in order to be produced.  Defendants' claimed that based on a sampling, they would have of hire temporary staff to perform the internal staff members' day-to-day work activities, estimated to be $187,805.00, with the actual number being much higher.  (Doc. 103).

Plaintiff supported her position with the opinion of a database expert, Jeffrey Hansen, with decades of expertise in data warehousing (Doc 116-2).

In response, Defendant filed a motion to strike and exclude undisclosed expert Jeffrey A. Hansen (Doc 119) and Plaintiff filed a response in opposition to Defendants motion to strike (Doc 123).

The Court granted (Doc 159)  Plaintiff's Motion to Request Evidentiary Hearing (Doc 152) to discuss compliance with the court's August 9, 2018 Order (Doc 97), the November 7, 2018 Order (Doc 124), the January 18, 2019 Order (Doc 144) and resolution

of all outstanding discovery by Plaintiff of Defendants' customer call records.  The Court also ordered any fact or expert witness whose evidence a party wishes the Court to consider, shall be called as a witness at the hearing.  Jeffery A. Hansen, Plaintiff's expert, was flown in from California to testify on the discovery issues regarding databases and data sampling.  Defendants and third parties also attended with their database experts. The hearing was held on May 14, 2019, in Orlando.

The Court ordered (Doc 172) that Defendants shall produce all their customer call records for the period of 2014-2018 to Plaintiff's expert, Jeffrey Hansen.  The Court found that Defendant's conduct resulted in motion practice and hearings that should not have been necessary and that none of the exceptions in Fed. R. Civ. P 37(a)(5)(A) applied. Thus, the Court ordered Plaintiff reasonable attorney's fees and expenses[5] for the hearing on May 14, 2019. (Doc 172).

In addition to the contentious discovery with Defendants, Ms. Clark required the court's assistance with resolving disputes with third parties from whom Ms. Clark had sought information. (Dkts 244-245).

Oral discovery was also substantial. Plaintiff Clark and then Plaintiff Mercer sat for their depositions, and Plaintiff's Counsel planned and conducted depositions of Defendants' witnesses, including its corporate designees as well as expert witnesses. These depositions were critical to gathering evidence needed for class certification, to prove Plaintiff's and the class members' claims, and to overcome Defendants' defenses.

---

[5] The expenses for the May 14th hearing have been removed from the list of expenses incurred since they have already been reimbursed.

Plaintiff's Counsel also worked extensively with Plaintiff's expert to help him prepare his reports and to review reports of Defendants' experts, Taylor and Sponsler as well as prepare for their depositions

Plaintiff's Counsel also responded to full written discovery, which required counsel to work with Plaintiff to craft responses, prepare Plaintiff's document production, negotiate with Defendants over their request for supplementation of Plaintiff's initial discovery answers, and prepare the supplemental responses.

### C.    The Parties Mediation

On December 2, 2019, the parties engaged in a daylong mediation with Rodney Max who is an accomplished and well-regarded mediator. While the parties did not reach an agreement at the mediation, the Parties continued to work with Mr. Max until a settlement in principle was reached in February 2020. Significant negotiations regarding the specifics and timing of the settlement terms, identification of the class, notice, the settlement agreement, and release continued until this filing of preliminary approval.

## II.    THE PROPOSED FEE AND EXPENSE AWARDS ARE REASONABLE

Courts have long recognized when counsel's efforts result in the creation of a common fund that benefits class members, counsel has a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (a "lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"). As *Boeing* explains:

> [The class members'] right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their

> representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery.

*Id.* at 480-481.

Following *Boeing*, this District and numerous Federal courts in Florida granted the same fee award sought here in other TCPA cases, *i.e.*, one-third of a common fund settlement as shown below.

The reasonableness of the proposed award here is confirmed both as a percentage of the settlement, as well as under the factors for evaluating fee motions in the Eleventh Circuit (the *Johnson*/*Camden I* factors).

**B.     The Fee Amount Is Reasonable as a Percentage of the Total Settlement**

Consistent with *Boeing*, the notice informed class members Class Counsel would move for a fee award from the settlement fund on a percentage-of-the-fund basis, and seek one-third of the fund. (*See Appendix 2* (Mailed Notice) at p.2). This is the correct method for determining the fee award because the Eleventh Circuit holds attorneys' fees awarded from a common fund "shall be based upon a reasonable percentage of the fund established for the benefit of the class." *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1278 (11th Cir. 2021) (quoting *Camden I Condo.*, 946 F.2d at 774); and *Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16(h) (TCPA case, determining fee award as a percentage of the fund).

Furthermore, the requested fee of one-third of the fund easily falls within the range of reasonableness, which can be as high as 50% of the fund in this Circuit. *See Camden I Condo.*, 946 F.2d at 774-775. Specifically, courts in this circuit routinely approve one-third percentage fee awards. *See Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175,

1195-96 (11th Cir. 2019) (overruling objections to 33% fee award ($2.1 million) from a $6.3 million settlement) (vacated on other grounds); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming a 33% fee award ($13.3 million) from a $40 million settlement); *Seghroughni v. Advantus Rest., Inc.*, 2015 U.S. Dist. LEXIS 64602 at *2 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable..."); *Cabot E. Broward 2 LLC v. Cabot*, 2018 U.S. Dist. LEXIS 192706 at *20 (S.D. Fla. Nov. 9, 2018) (citing "19 cases from this Circuit in which attorneys' fees amounting to 33% or more of a settlement fund were awarded," including settlements of $310 million, $77.5 million, $75 million, $40 million, and $25 million); *see also Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786 at *13 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement.");

In particular, percentage fee awards equal to or greater than one third of the fund are commonly approved in consumer class actions, including TCPA class actions brought in this District. *See Iverson v ADF*, 18-cv-00867-BJD-JBT (M.D. Fl. March 1, 2022)(TCPA class action awarded one third plus expenses); Cook *v. Palmer*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16 (M.D. Fla. Jun. 5, 2020) (granting one third of a $3.5 million fund plus expenses citing, *inter alia*, *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing*, 444 U.S. at 478); *Guarisma v. Microsoft Corp.*, 15-cv-24326-CMA, ECF No. 79, pp.7-8, ¶g.-¶j., and ¶14 (S.D. Fla. Oct. 27, 2017); *Legg v. Laboratory Corporation of America Holdings*, No. 14-cv-61543-RLR, ECF No. 227, p.7 (S.D. Fla. Feb. 18, 2016); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-JIC, ECF No. 151, ¶15 (S.D. Fla. Aug. 2, 2016). *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (granting 36% fee award in TCPA case); *In re Capital One*, 80 F. Supp. 3d 781, 807 807

(N.D. Ill. 2015) (granting 36% fee award from first $10 million of the settlement); *Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (granting one-third percentage fee award in TCPA case); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill. Dec. 23, 2013) (Dkt. No. 87) (same); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 23, 2015) (same). Accordingly, the proposed fee award here – the same award this Court recently granted Class Counsel in a TCPA case in *Cook* – is reasonable on a percentage basis.

**C.    The Proposed Fee Award Is Also Reasonable Under *Johnson/Camden I***

The Eleventh Circuit has endorsed using the factors articulated *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974), to confirm the award's reasonableness. *See Muransky*, 922 F.3d at 1195 (citing *Camden I*, 946 F.2d at 775). The *Johnson*/*Camden I* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) time limitations imposed by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3. These factors confirm the reasonableness of the proposed fee award here.

**1.  The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.**

The second, sixth, and tenth *Johnson/Camden I* factors—the novelty and difficulty of the issues, whether the fee is contingent, and the "undesirability" of the case, respectively—are interrelated and support the proposed award.

This case is novel and difficult on multiple levels. First, had the Court reached a decision on Plaintiff's class certification motion, it is an open issue as to whether the Court would have granted it. As Defendants argued a number of courts in this District have denied class certification in TCPA cases. *See Morgan v. Adventist Health System/Sunbelt, Inc.*, 2020 U.S. Dist. LEXIS 62299 (M.D. Fla. Jan. 15, 2020) (denying certification in TCPA case); *Sliwa v. Bright House Networks, LLC*, 2019 U.S. Dist. LEXIS 167805 (M.D. Fla. Sep. 27, 2019) (same); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454 (M.D. Fla. 2018) (same).[6]

Second, and related to the class certification issue, Plaintiff faced the possibility the Court would grant Defendants' pending summary judgment motion

Finally, assuming Plaintiff prevailed on class certification and the merits, the resulting damage award itself presents a novel issue. Some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards—even

---

[6] On the other hand, Plaintiff's class certification motion argued virtually every appellate court to examine the issue has recognized the TCPA is ideally suited to class certification, which is essential to enforcing the TCPA and redressing the rampant explosion of robocalls. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("'Class certification is normal in litigation under [the TCPA], because the main questions …. are common to all recipients.'" ) (quoting *Ira Holtzman, C.P.A., & Assosc. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)); *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 656 (4th Cir. 2019); *see also*, *e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041-42 (9th Cir. 2012) (affirming certification of TCPA class).   During briefing, the Eleventh Circuit recognized TCPA actions are appropriately certified even where individual questions about the class members' injuries exist "if there is a plausible straightforward method to sort them out at the back end of the case." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1275 (11th Cir. 2019).

after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* 2011 U.S. Dist. LEXIS 48323 at *13 (N.D. Ill. May 5, 2011) ("Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027 at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

In addition to these myriad challenges, the ability to recover fees and expenses here has always been contingent on a successful outcome. Class Counsel had to advance the fees and expenses, and risked receiving nothing in return. This is important because:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high.

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d 1330, 1364 (S.D. Fla. 2011) (*quoting In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1335 (S.D. Fla. 2001)). The risk was enhanced here by the fact Class Counsel were up against well-heeled defendants with sophisticated class action defense counsel. Accordingly, "[c]ases recognize that attorneys' risk is ''perhaps the foremost factor in determining an appropriate fee award." *Pinto,* 513 F.Supp.2d at 1339 (collecting cases) (internal quotes omitted).

The case's novelty, difficulty and contingent nature also demonstrate its undesirability. The TCPA does not contain a fee-shifting provision, and the typical TCPA plaintiff only receives a small number of calls for which they typically can expect to recover no more than $500 each. Thus, when class certification is denied, the plaintiff's attorney has no practical means to recover their fees or out-of-pocket expenses.

Few lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to potentially advance substantial amounts of out-of-pocket expenses and risk getting nothing, especially given that the inherent possibility of failing to certify the class, the risk of losing on summary judgment or at trial, and the risk of losing any victory on appeal that Class Counsel faced here.

Finally, although Class Counsel achieved an excellent result for the Class, that outcome was anything but certain when they took the case, as evidenced by the opinions above denying class certification, which were also cases filed by Class Counsel. Along that line, although Class Counsel have had success in many class actions, they have recovered nothing or nominal amounts in others, including in TCPA cases. *See, e.g.*, *Morgan*, *Wilson*, and *Sliwa*, *supra*, as well as *Flaum v. Buth-Na-Bodhaige, Inc.*, 15-cv-62695, Dkt. 67 (S.D. Fla.) (although Class Counsel filed their case first, the class claims were settled by a later-filed, competing class action that only recovered gift cards, and Plaintiff's counsel received nothing); and *Kirchein v. Pet Supermarket, Inc.*, 297 F.Supp.3d 1354, 1355-56 (S.D. Fla. 2018) (defendant successfully moved to dismiss case for lack of

standing *after* agreeing to settlement and after settlement had been granted preliminary approval).[7]

There is certainly no guarantee of success at the class certification stage, or on the merits if the case is litigated to judgment, or on any appeal that may follow. Accordingly, this factor also weighs in favor of the proposed fee award. *See In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1364.

### 2.   Class Counsel Achieved an Excellent Result for the Class.

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation "with particular emphasis on the 'monetary results achieved' in the case" by class counsel. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1202 (S.D. Fla. 2006); *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("In the common fund case, … the monetary amount of the victory is often the true measure of success…").

Here, the mediated settlement provides substantial monetary recovery and similar or significantly better than the per-class member recovery in the many TCPA class settlements approved in this Circuit and elsewhere. *See*, *e.g.*, *James v. JPMorgan Chase Bank, N.A.*, 2017 U.S. Dist. LEXIS 91448 at *3 (M.D. Fla. June 5, 2017) (holding class counsel's result of "$81 per class member who submitted a claim equals or exceeds the

---

[7] Class actions are inherently risky. For example, in another case Class Counsel was involved in, the class was decertified two years after certification, and after notice had been sent to the Class, which resulted in Class Counsel incurring hundreds of thousands of dollars in notice costs, plus the additional cost to send notice of the decertification. *See Johnson v Yahoo!, Inc.*, 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) (order decertifying class after notice). Similarly, in *Braver v Northstar*, 17-cv-00383-F (D. Ok 2020), a co-defendant filed for bankruptcy after class certification, notice to class, and judgment, and in *Kinnamon v. Ditech Financial, LLC.*, 16-646 JAR, Dkt. 218 (E.D. Mo. Dec. 2, 2019), the case was dismissed due to bankruptcy after class certification and summary judgment were fully briefed.

typical award in a TCPA class action."); *Markos v. Wells Fargo Bank*, *N.A.*, 2017 U.S. Dist. LEXIS 17546 at *11 (N.D. Ga. Jan. 30, 2017) (finding $24 per class member to be "an excellent result"); *Wojcik v. Buffalo Bills, Inc.*, No. 8:12-cv-02414-SDM-TBM at Dkt. 77, p.18 and Dkt. 79 (M.D. Fla. Aug. 25, 2014) (class claimants received a $57.50-$75.00 gift card); *In re Enhanced Recovery Co.*, 13-md-2398-Orl-37GJK (M.D. Fla. Jul. 29, 2014) at Dkt. 123 at p.1 (class only received injunctive relief ); *Hashw v. Dep't Stores Nat'l Bank,* 182 F.Supp.3d 935, 944 (D. Minn. 2016) (approving a TCPA settlement that provided $33.20 per claimant); *In re Capital One TCPA Litig.*, 12-cv-10064 at Dkt. 329, p.42 (N.D. Ill. Feb. 12, 2015) (settlement approved where each claimant would be awarded $39.66) (Holderman, J.); *Kramer v. Autobytel*, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement for 47 million text messages); *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (approving $17.1 million settlement for 5,887,508 class members); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement for 6,079,411 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement for approximately 18.1 million class members). Accordingly, this factor weighs strongly in favor of the proposed fee award.

### 3. The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Proposed Fee Award.

The first, fourth, and seventh *Johnson/Camden I* factors – the time and labor, preclusion of other employment, and time limitations imposed, respectively – are also interrelated inquires and each support the reasonableness of the request. Class Counsel engaged in litigation against well-heeled defendants and sophisticated defense counsel. The

work spanned numerous years and substantial litigation including the review of thousands of pages of discovery production from Defendants, depositions of experts, corporate representatives, plaintiffs and preparation and attendance at hearings pertaining to Plaintiff's Motion to Compel Discovery Responses from Defendants.

Further, Class Counsel will be communicating with class members who contact counsel in response to the notice, preparing a detailed memorandum in support of final approval, and working with the claims administrator to answer questions and supervise the distribution of payments. All of this work has and will continue to divert substantial time and resources from other matters. *See Yates v. Mobile Cnty. Pers. Bd*., 719 F.2d 1530, 1535 (11th Cir. 1983) (the expenditure of time "necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.") (rec. of special master); *see also Stalcup v. Schlage Lock Co.*, 505 F.Supp.2d 704, 708 (D. Colo. 2007) (noting "priority work that delays a lawyer's other work is entitled to a premium."). Thus, the above factors also support the proposed fee award.

### 4.  The Requested Fee is Consistent with Other Class Settlements.

The fifth and twelfth *Johnson/Camden I* factors, the customary fee and awards in similar cases, also support approval. As noted above, many courts in this District and throughout the country have approved one-third percentage fee awards in consumer class actions, including TCPA class actions. *See Muransky*, 922 F.3d at 1195-96 (affirming one-third percentage fee award in consumer class action over class member objections) (vacated on other grounds); *Waters*, 190 F.3d at 1295-98 (affirming a one-third percentage fee award ($13.3 million) in a $40 million settlement); *Iverson* supra (M.D. Fl. 2022)

(Granting one third of fund plus expenses); *Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16(h) (granting Class Counsel here one third of a $3.5 million fund in a TCPA case); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 150274 at *18 (M.D. Fla. Dec. 29, 2011) (granting a fee award of one-third of the common fund); *Guarisma v. Microsoft Corp.*, 2017 U.S. Dist. LEXIS 227871, *11 (S.D. Fla. Oct. 27, 2017) (same); *Legg v. Lab. Corp. of Am. Holdings*, 2016 U.S. Dist. LEXIS 122695 at *10 (S.D. Fla. Feb. 18, 2016) (same); *Legg v. Spirit Airlines, Inc.*, 14-cv-61978-JIC, Dkt. 151 at pp.5-6 (S.D. Fla. Aug. 2, 2016) (same); *Wood v. J. Choo*, 2017 U.S. Dist. LEXIS 204370 at *11-15 (S.D. Fla. May 9, 2017) (same); and *e.g Wolff*, 2012 U.S. Dist. LEXIS 153786 at *13 ("One-third of the recovery is considered standard…"); *Dear v. Q Club Hotel, LLC*, 2018 U.S. Dist. LEXIS 42787 at *11 (S.D. Fla. Mar. 14, 2018) ("A review of the case law reveals that a 33.3% fee award is a consistent award in class action common fund cases."). Accordingly, this factor also favors the proposed fee award.

### 5.  This Case Required a High Level of Skill.

The remaining *Johnson/Camden I* factors – the skill required to perform the legal services properly, and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable.

As shown, Class Counsel achieved a settlement that confers substantial monetary benefits on the class despite litigating against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.*, 176 F.Supp.2d at 1334 ("in assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced."). This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope and

complexity including their ability to obtain numerous discovery orders requiring massive amounts of data production after evidentiary hearings with experts.

Class Counsel regularly engage in TCPA and complex litigation involving consumer issues, and have extensive class action experience. (*See Appendix 3* (Keogh Decl.) at ¶4, ¶7, and ¶9; *Appendix 4* (Howard Decl.) at ¶8, ¶12. Class Counsel knew the work that achieving an outcome comparable to this Settlement would take based on their success in prior cases, what that work would yield, the issues they faced at every stage, the potential recovery to be had, and the chances of achieving it. This experience enabled Class Counsel to convince Defendants not only that Class Counsel were adequate to the task and willing to do what it took to achieve an excellent result, but that they genuinely understood what the case was worth given the law, facts and risks (for both sides). Even then, the case did not settle until after full discovery, after class certification and summary judgment were briefed, and after a mediation with a well-respected third-party neutral.

In short, the *Johnson/Camden I* factors confirm the proposed attorneys' fee award is reasonable. Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), it should be approved.

### D.  The Expenses Incurred Are Reasonable and Should Be Approved.

The settlement also permits Class Counsel to seek recovery of expenses incurred on behalf of the Class. This figure totals $23,500.40,  and largely consists of expenses related to experts, depositions, travel and the mediation. (*See Appendix 3* (Keogh Decl.) at ¶21; *Appendix 4* (Howard Decl.) at ¶14.  None of for overhead items like photocopying, research, telephone, and meals were included. Thus, counsel's out-of-pocket expenses should be approved. *See, e.g., Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16(h) (M.D. Fla. Jun. 5, 2020) (Davis, J.) (granting Class Counsel a one-third percentage fee award plus

expenses in a TCPA class case); *Wolff*, 2012 U.S. Dist. LEXIS 153786 at *19 (granting one-third percentage fee award plus $112,157 in expenses); and *Dear*, 2018 U.S. Dist. LEXIS 42787 at *11 (granting one-third percentage fees award, plus $304,684 in expenses).

## III.   THE PROPOSED SERVICE AWARD IS REASONABLE

Service awards or incentive payments are commonly awarded to class representatives for their service to the class in vindicating their rights and enabling them to secure relief on their common claims, as contemplated by Federal Rule 23. *See Muransky*, 922 F.3d at 1196 ("Many circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23.") (citations omitted) (vacated on other grounds).

Subject to this Court's approval and the finality of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), mandate withheld, No. 18-12344, (Nov. 9, 2020), which held class representative incentive awards are no longer allowed but is considering a petition for rehearing *en banc*, Plaintiff respectively requests an award of $20,000 from the fund.

Given the status of *Johnson*, courts in this District have found this wait-and-see approach concerning class representative service awards to be appropriate. *See Iverson supra* (M.D. Fl. March 1, 2022)(Awarding service award at final approval contingent upon *Johnson*); *Mosley v. Lozano Ins. Adjusters, Inc.*, 2021 WL 293243 at *5 (M.D. Fla. Jan. 11, 2021) (recommending deferring ruling on the service award pending *NPAS*), R&R adopted, 2021 WL 289031 (M.D. Fla. Jan. 28, 2021); and *Mercer v FDS Bank and Dept. Stores Nat'l Bank,* 6:17-cv-692-Orl-78EJK at Dkt. 281, p.4 (M.D. Fla. July 20, 2021)

("recommend[ing] the Court approve the contingent incentive award."), R&R adopted August 31, 2021 at Dkt. 282.

In the event service awards are allowed, the amount sought here is more than reasonable. *See*, *e.g.*, *Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶17 (M.D. Fla. Jun. 5, 2020) (Davis, J.) (granting $20,000 service award in TCPA case); *Cooper v. NelNet, Inc.*, 14-cv-314, Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) (approving a $25,000 service award in TCPA case); *Cabot E. Broward 2 LLC*, 2018 U.S. Dist. LEXIS 192706 at *28- 29 (S.D. Fla. Nov. 9, 2018) (approving $50,000 per plaintiff, noting "[t]ogether, the requested awards total $100,000, or 0.1% the amount recovered for the Class, which is well within the range of incentive awards in other cases.") (collecting cases approving service awards ranging from $15,000 to $1.76 million); *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285, Dkt. 93 at ¶18  (N.D. Ill. Oct. 21, 2015) (approving $25,000 service award in TCPA case); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, Dkt. 243 at ¶20 (N.D. Ill. Feb. 27, 2013) (granting $30,000 service award in TCPA class settlement).

Furthermore, Plaintiff's proposed award is justified by Ms. Clark's personal efforts in assisting Class Counsel in discovery, being forced to undergo a medical examination, being deposed, and attending the mediation. These efforts continued after settlement where she submitted a declaration in support of the initial preliminary approval motion, which was pending at the time of her passing.  Thus, Plaintiff more than subjected herself to the mere "inconvenience and time delays" the Eleventh Circuit found sufficient to justify a $10,000 service award. *See Muransky*, 922 F.3d at 1197 ($10,000 service award affirmed where plaintiff was never deposed and the case settled early in the litigation as "the District Court observed that Dr. Muransky 'was subjecting himself to inconvenience

and time delays that didn't materialize as much as they might have, but they still were a possibility when he signed on as the class representative.'") (vacated on other grounds).

Once again, the class was expressly advised of the exact service award Plaintiff would seek, and the proposed $20,000 amount will not have a material impact on class members' pro rata share. Thus, subject to the final ruling in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), the proposed service award should be approved.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court award class counsel attorneys' fees of $500.000, which is one third of the common fund, plus $23,500.40 for reimbursement for the expenses class counsel incurred in prosecuting the class claims. In addition, Plaintiff requests the Court award him $20,000 as a service award if permitted by law.

Respectfully Submitted,

*s/Keith J. Keogh*
Keith J. Keogh (FBN: 0126335)
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.726.1092 (Main)
Keith@KeoghLaw.com

*/s/ William Peerce Howard*
William Peerce Howard
Florida Bar No. 0103330
Billy@TheConsumerProectionFirm.com
Amanda J. Allen
Florida Bar No. 098288
Amanda@TheConsumerProectionFirm.com
The Consumer Protection Firm, PLLC
401 E. Jackson Street, Suite 2340
Tampa, FL. 33602
Telephone: (813) 500-1500

Class Counsel

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 14, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Keith J. Keogh*
     Keith J. Keogh

24