# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

Ronda Mercer, as Personal Representative
of The Estate of Deborah Denise Clark
a/k/a Deborah D. Clark, Deceased, , individually
and on behalf of all others similarly situated,

       Plaintiff,

v.

FDS BANK and DEPARTMENT STORES
NATIONAL BANK,

       Defendants.

_____ /

FDS BANK and DEPARTMENT STORES
NATIONAL BANK,

       Third-Party Plaintiffs,

v.

RONDA MERCER,

       Third-Party Defendant.

_____ /

Case No. 6:17-cv-00692-WWB-EJK

# UNOPPOSED MOTION FOR
# FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    HISTORY OF PROCEEDINGS ....................................................................... 2

    A. The TCPA ............................................................................................... 2

    B. The Litigation. ........................................................................................ 3

    C. Discovery ................................................................................................ 4

    D. The Parties Mediation ............................................................................ 7

II.   THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT ............................. 7

III.  THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL ................. 10

    A. The Settlement Is the Product of Arms-Length Negotiations. ............... 11

    B. The Results Compared to the Possible Recovery, and Likelihood of Success,
       Favor Approval of the Settlement. .......................................................... 12

    C. The Stage of the Proceedings, and the Complexity, Length, and Expense of
       Further Litigation, Favor Approval. ........................................................ 14

    D. The Lack of Opposition to the Settlement and Opinions of Competent Counsel
       Favor Approval. ...................................................................................... 15

IV.   THERE IS NO OBJECTION TO THE PROPOSED ATTORNEY FEE, EXPENSE,
      OR CLASS REPRESENTATIVE SERVICE AWARDS ............................................ 16

V.    DEFENDANTS DO NOT OBJECT TO THE RELIEF SOUGHT ........................... 22

CONCLUSION ............................................................................................... 22

## TABLE OF AUTHORITIES

Cases

*Adams v. AllianceOne Receivables Mgmt. Inc.,*
  No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012)..................................................... 13, 18

*ADT Sec. Servs., Inc.,*
  No. 11-1925, (N.D. Ill. Jun. 21, 2013)........................................................ 21

*Barr v. Am. Ass'n of Political Consultants,*
  140 S. Ct. 2335 (2020)............................................................................. 2

*Behrens v. Wometco Enterprises, Inc.,*
  118 F.R.D. 534 (S.D. Fla. 1988) .............................................................. 10

*Bennett v. Behring Corp.,*
  737 F.2d 982 (11th Cir. 1984) ................................................................. 10

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980)................................................................................. 17

*Braver v Northstar Alarm Serv.,*
  17-cv-00383-F (W.D. Okla.)..................................................................... 20

*Cabot E. Broward 2 LLC v. Cabot,*
  2018 U.S. Dist. LEXIS 192706 (S.D. Fla. Nov. 9, 2018)........................... 17, 21

*Camden I Condo Ass'n v. Dunkle,*
  946 F.2d 768 (11th Cir. 1991) ........................................................... 16, 17, 18

*Cook,*
  16-cv-673-BRD-JRK, (M.D. Fla. Jun. 5, 2020)..................................... 18, 20, 21

*Cooper v. Nelnet, Inc.,*
  14-cv-00314 (M.D. Fla. Feb. 26, 2015) ..................................................... 10

*Cooper v. NelNet, Inc.,*
  14-cv-314 (M.D. Fla. Aug. 4, 2015).......................................................... 21

*Faught v. Am. Home Shield Corp.,*
  668 F.3d 1233 (11th Cir. 2011) ................................................................. 8

*Flaum v. Buth-Na-Bodhaige, Inc.,*
  15-cv-62695 (S.D. Fla.) ............................................................................ 19

*Flaum v. Doctor's Assocs.*,
    2019 U.S. Dist. LEXIS 40626 (S.D. Fla. Mar. 11, 2019) ...................................................... 20

*Gevaerts v. TD Bank, N.A.*,
    2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015) ........................................... 13, 21

*Greco v. Ginn Dev. Co.*,
    635 Fed. Appx. 628 (11th Cir. Dec. 2, 2015) ........................................................................... 9

*Hanley v. Fifth Third Bank*,
    No. 12-1612 (N.D. Ill.) ............................................................................................................ 17

*Hashw v. Dep't Stores Nat'l Bank*,
    182 F.Supp.3d 935 (D. Minn. 2016) ............................................................................... 13, 18

*In re Capital One TCPA Litigation*,
    12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) ................................................ 13, 18

*In re Checking Acct. Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................................. 11

*In re Domestic Air Transport.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ............................................................................................ 11

*In re Enhanced Recovery Co.*,
    13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) ........................................................ 13, 18

*In re Equifax Customer Data Breach Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ....................................................... 10, 13, 15, 16

*In re Smith*,
    926 F.2d 1027 (11th Cir. 1991) .............................................................................................. 11

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ............................................................................................ 12

*Iverson v Advanced Disposal Services et. al.*,
    3:18-CV-0867 (M.D. Fl. March 1 2022)................................................................................. 18

*James v. JPMorgan Chase Bank, N.A.*,
    No. 8:15-CV-2424-T-23JSS,
    2017 WL 2472499 (M.D. Fla. June 5, 2017) ......................................................................... 13

*Johnson v Yahoo!, Inc.*,
    2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) ...................................................... 20

*Johnson v. NPAS Sols., LLC*,
   975 F.3d 1244 (11th Cir. 2020)..................................................................... 21, 22

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012) ........................................................................ 8

*Kinnamon v. Ditech Financial, LLC.*,
   16-646 JAR (E.D. Mo. Dec. 2, 2019) ............................................................. 20

*Kirchein v. Pet Supermarket, Inc.*,
   297 F.Supp.3d 1354 (S.D. Fla. 2018) ............................................................. 20

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) ..................................................................... 15

*Lipuma v. American Express Co.*,
   406 F.Supp.2d 1298 (S.D. Fla. 2005). ......................................................... 2, 15

*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731
   (S.D. Cal. Feb. 5, 2013) ............................................................................... 13, 18

*Markos v. Wells Fargo Bank, N.A.*,
   No. 1:15-cv-01156-LMM,
   2017 U.S. Dist. LEXIS 17546 (N.D. Ga. Jan. 30, 2017).............................. 13, 18

*Martin v. Dun & Bradstreet, Inc.*,
   12-215 (N.D. Ill. Jan. 16, 2014) ..................................................................... 17

*Martin v. JTH Tax, Inc.*,
   No. 13-6923 (N.D. Ill. Sept. 16, 2015) .......................................................... 18

*Mims v. Arrow Fin. Servs.,LLC*,
   132 S.Ct. 740 (2012) ......................................................................................... 2

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368 (2012)........................................................................................... 2

*Morgan v Adventist Health System et al.*,
   6:18-cv-01342-WWB-DCI (M.D. Fl. 2020) ................................................ 12, 13

*Mosley v. Lozano Ins. Adjusters*,
   2021 U.S. Dist. LEXIS 15971 (M.D. Fla. Jan. 11, 2021)................................. 21

*Muransky v. Godiva Chocolatier, Inc.*,
   922 F.3d 117 (11th Cir. 2019) ........................................................................ 17

*Palmer v. Sprint Nextel Corp.*,
    No. 09-cv-01211 (W.D. Wash. Oct. 21, 2011) ............................................................ 13, 18

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .................................................................................................... 7

*Pinto v. Princess Cruise Lines, Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...................................................................... 19

*Poertner v. Gillette Co.*,
    2014 U.S. Dist. LEXIS 116616 (M.D. Fla. Aug. 21, 2014) ....................................... 14

*R&R adopted*,
    2021 U.S. Dist. LEXIS 15726 (M.D. Fla. Jan. 28, 2021) .......................................... 21

*Roll v. Enhanced Recovery Co., LLC*,
    2021 U.S. Dist. LEXIS 217955 (M.D. Fla. Nov. 10, 2021); ...................................... 10

*Scott v. Util. Partners of Am., LLC*,
    2017 U.S. Dist. LEXIS 17348 (D. Kan. Feb. 6, 2017) .............................................. 11

*Seghroughni v. Advantus Rest., Inc.*,
    2015 U.S. Dist. LEXIS 64602 (M.D. Fla. May 13, 2015) .......................................... 17

*Spicer v. Chi. Bd. of Options Exchange, Inc.*,
    844 F. Supp. 1226 (N.D. Ill. 1993) ........................................................................... 21

*Taylor v. Citizens Telecom Servs. Co.*,
    2021 U.S. Dist. LEXIS 230611 (M.D. Fla. Sept. 10, 2021) ....................................... 10

*Ulbrich v. GMAC Mortg., LLC*,
    2013 U.S. Dist. LEXIS 188087 (S.D. Fla. May 10, 2013) .......................................... 14

*Warren v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1998) .......................................................................... 11

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir.1999) .................................................................................. 17

*Wojcik v. Buffalo Bills, Inc.*,
    Case No. 8:12-cv-02414-SDM-TBM (M.D. Fla. Aug. 25, 2014) ............................... 13, 18

*Wolff v. Cash 4 Titles*,
    2012 U.S. Dist. LEXIS 153786 (S.D. Fla. Sept. 26, 2012) ....................................... 17

Statutes

47 U.S.C. § 227(b) ........................................................................................... 3
47 U.S.C. §227(b)(3)(B), (C) ...................................................................... 3, 12
Telephone Consumer Protection Act, 47 U.S.C. § 227 ..................................... 1, 3

Rules

Fed. R. Civ. P 37(a)(5)(A) ............................................................................... 6
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 7, 9

Treatises

*https://www.departmentstorestcpasettlement.com/page/faq*
    (Last visited March 14, 2022) ................................................................. 16

Plaintiff, Ronda Mercer[1], pursuant to Federal Rule of Civil Procedure 23, moves for final approval of the all cash nationwide class action settlement agreement with Defendants, FDS Bank and Department Stores National Bank, for claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The settlement Agreement is attached as *Appendix 1*.

The Settlement provides Defendants shall pay One Million Five Hundred Thousand Dollars ($1,500,000.00) into a Settlement Fund. Each class member who filed a valid claim will receive $120.00 cash. This is a significant portion of the statutory damages available under TCPA, which provides for $500 per violation (up to treble if willful). In fact, on a per-class-member basis, this Settlement exceeds the vast majority of TCPA settlements granted final approval.

On August 31, 2021 this Court granted the Settlement preliminary approval, finding the settlement within the range of reasonableness, and thus that the class should be given notice of the Settlement and an opportunity to object to the Settlement or opt out of it. Dkt. 283. Nothing has changed to alter the Court's preliminary determination.

To the contrary, the class members' response to the Settlement has been positive. 6,321 class members filed claims to receive the benefits of the Settlement. *See* Declaration of Claims Administrator as *Appendix 2* at ¶10.

---

[1] Ms. Clark passed away on June 23, 2020 and Ronda Mercer, as Personal Representative of The Estate of Deborah Denise Clark a/k/a Deborah D. Clark, Deceased has been substituted.

1

Furthermore, no class member objected to *any* aspect of the Settlement (including the proposed attorneys' fee and class representative service awards), and only one class member opted out of the Settlement. *Id.* at ¶¶11-12.  To be sure, this complete absence of objections or even "a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).

Thus, as further explained below, the Settlement easily merits final approval, and both this motion and Plaintiff's pending motion for an award of attorneys' fees, expenses, and a class representative service award (Dkt. 284), should be granted.

## I.   HISTORY OF PROCEEDINGS

### A. The TCPA

The "[v]oluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012); *see also Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020) ("The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone."). Specifically, Congress found "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided "banning" the making of such calls without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. Law 102-243, 105 Stat. 2394, 2394-95, Sec. 2(12), (13) (codified at 47 U.S.C. § 227).

Accordingly, the TCPA makes it unlawful to make any call using an ATDS or an artificial or prerecorded voice to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Furthermore, the TCPA gives recipients of calls violating this ban the right to sue for statutory damages of $500 per violation, which the Court may increase up to treble if a violation is shown to be willful. 47 U.S.C. §227(b)(3)(B), (C).

**B. The Litigation.**

This class action has been pending for over five and half years.  On September 9, 2016, Ms. Clark filed this matter as a single-plaintiff suit pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), Case No. 6:16-cv-01582-CEM-DAB ("Clark I Action"). Ms. Clark filed an Amended Class Action Complaint on November 18, 2016. (Clark I Action, Dkt 17.) Ms. Clark moved to voluntarily dismiss the Clark I Action on March 27, 2017, as granted by this Court on March 28, 2017.  (Clark I Action, Doc. Nos. 30 and 31.)

Class Representative refiled her Class Action Complaint as the instant matter on April 17, 2017, similarly alleging claims for violation of the TCPA, Case No. 6:17-cv-00692-WWB-EJK ("the Action."). Ms. Clark filed a Motion for Class Certification on July 17, 2017.

After briefing a contested Motion to Amend, Ms. Clark filed an Amended Complaint on March 13, 2018. On December 7, 2018, Defendant filed a motion to dismiss for lack of prosecution because Ms. Clark suffered serious medical conditions

that required her to reschedule her deposition. The Court held a hearing on this motion on January 18, 2019. (Dkt 142) At the request of Defendant and at the Court's Order, Ms. Clark underwent a medical examination to determine if she was capable of prosecuting the case as Class Representative. (Dkt 151) Defendants' medical examiner determined Ms. Clark was capable of continuing with the prosecution of her case. After lengthy and contentious discovery, Defendants filed a Motion for Partial Summary Judgment, and Ms. Clark filed her Motion for Class Certification under seal on December 4, 2019.

### C. Discovery

Discovery in this case has been thorough and contentious, requiring the court's intervention on numerous occasions after full briefing by both parties and numerous discovery hearings. Numerous motions for protective order, motions to show cause, motions to strike, and motions to compel were filed, and both parties hired experts to assist in the discovery process who also attended some of the hearings to provide testimony as described in more detail below. (Docs 77, 80, 81, 82, 84, 89, 91, 92, 94, 102, 103, 119, 123, 124, 189-191, 222, 223). Defendants were ultimately ordered to produce significant amount of data of call records.

In addition, not only was Ms. Clark deposed, but she was ordered to undergo a medical examination as part of Defendants' challenge of her adequacy to determine if she was healthy enough to represent the class as explained above.

A hearing was held on August 9, 2018 on Plaintiff's Motion to Compel Discovery Responses and Plaintiff's Second Amended Notices of Taking Deposition

of corporate Representatives.  The primary issue raised by Plaintiff's counsel was for Plaintiff to obtain the underlying class data in the form of Defendants' account notes.

Defendants' counsel noted at the August 9, 2018 hearing that the account notes at issue cannot be electronically searched and must be manually printed and scanned in order to be produced.  Defendants' claimed that based on a sampling, they would have of hire temporary staff to perform the internal staff members' day-to-day work activities, estimated to be $187,805.00, with the actual number being much higher. (Doc. 103).

Plaintiff supported her position with the opinion of a database expert, Jeffrey Hansen, with decades of expertise in data warehousing (Doc 116-2).

In response, Defendant filed a motion to strike and exclude undisclosed expert Jeffrey A. Hansen (Doc 119) and Plaintiff filed a response in opposition to Defendants motion to strike (Doc 123).

The Court granted (Doc 159) Plaintiff's Motion to Request Evidentiary Hearing (Doc 152) to discuss compliance with the court's August 9, 2018 Order (Doc 97), the November 7, 2018 Order (Doc 124), the January 18, 2019 Order (Doc 144) and resolution of all outstanding discovery by Plaintiff of Defendants' customer call records.  The Court also ordered any fact or expert witness whose evidence a party wishes the Court to consider, shall be called as a witness at the hearing.  Jeffery A. Hansen, Plaintiff's expert, was flown in from California to testify on the discovery issues regarding databases and data sampling.  Defendants and third parties also

attended with their database experts.  The hearing was held on May 14, 2019, in Orlando.

The Court ordered (Doc 172) that Defendants shall produce all their customer call records for the period of 2014-2018 to Plaintiff's expert, Jeffrey Hansen.  The Court found that Defendant's conduct resulted in motion practice and hearings that should not have been necessary and that none of the exceptions in Fed. R. Civ. P 37(a)(5)(A) applied.  Thus, the Court ordered Plaintiff reasonable attorney's fees and expenses[2] for the hearing on May 14, 2019. (Doc 172).

In addition to the contentious discovery with Defendants, Ms. Clark required the court's assistance with resolving disputes with third parties from whom Ms. Clark had sought information. (Dkts 244-245).

Oral discovery was also substantial. Plaintiff Clark and then Plaintiff Mercer sat for their depositions, and Plaintiff's Counsel planned and conducted depositions of Defendants' witnesses, including its corporate designees as well as expert witnesses. These depositions were critical to gathering evidence needed for class certification, to prove Plaintiff's and the class members' claims, and to overcome Defendants' defenses.

Plaintiff's Counsel also worked extensively with Plaintiff's expert to help him prepare his reports and to review reports of Defendants' experts, Taylor and Sponsler as well as prepare for their depositions

---

[2] The expenses for the May 14th hearing have been removed from the list of expenses incurred since they have already been reimbursed.

Plaintiff's Counsel also responded to full written discovery, which required counsel to work with Plaintiff to craft responses, prepare Plaintiff's document production, negotiate with Defendants over their request for supplementation of Plaintiff's initial discovery answers, and prepare the supplemental responses.

### D. The Parties Mediation

On December 2, 2019, the parties engaged in a daylong mediation with Rodney Max who is an accomplished and well-regarded mediator. While the parties did not reach an agreement at the mediation, the Parties continued to work with Mr. Max until a settlement in principle was reached in February 2020. Significant negotiations regarding the specifics and timing of the settlement terms, identification of the class, notice, the settlement agreement, and release continued until the filing of preliminary approval.

## II.    THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT

To satisfy Rule 23 and Due Process, the notice of the Settlement need only be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (due process requires the notice be "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (citation omitted).[3]

---

[3] However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal

The notice plan approved by the Court and executed by the Claims Administrator easily meets this standard. Defendants did not have the name and contact information for the class members, but only the telephone number called. Thus the Settlement provided for reverse look up of the telephone number to obtain name and address, which was then sent direct notice by regular mail.

Furthermore, the notice described the nature of the action, the class, the claims at issue, the major settlement terms (including the settlement benefits, proposed attorneys' fee award and basis for its calculation, and proposed service award), as well as the class members' right to object to the settlement, opt-out, appear through their own counsel, submit a claim for a share of the settlement proceeds, how to exercise those rights and by when, the binding effect of the class judgment, and how to get additional information free of charge. (*See Appendix 2* (Declaration of Claims Administrator) at ¶14 and at Ex. 1 (Mail Notice)).

Moreover, to further help class members make an informed decision, the notice directed them to a website set up and run by the Claims Administrator. (*Id.* at Ex. 1 (Mail Notice), p.2 ("How do I get more information about the settlement?") The site also provided additional details about the Settlement, including a long-form notice containing numerous "FAQs" about the case, additional details about the settlement and the class members' rights to object or opt out, along with a copy of relevant court

---

quotations and citation omitted). Plus, "due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (citations omitted).

documents (*e.g.* the settlement agreement, preliminary approval motion, preliminary approval order, and attorneys' fee petition), plus a toll-free number class members could call with additional questions. (*Appendix 2* (Claims Admin. Decl.) at ¶14 (Website Notice)). Finally, the website provided an electronic claim form class members could use to conveniently file their claims online. *Id.*

The notice program also explicitly advised the class as to the dollar amount and percentage of the fund sought for attorneys' fees. Specifically, it advised the Class "Plaintiff will petition for a service award not to exceed $5,000.00 for Plaintiff's work in representing the Class and Class Counsel's fees up to one third of the settlement fund, not to exceed $500,000.00, plus reasonable expenses." *See* (*Appendix 2* (Claims Admin. Decl.) at Ex1¶1. Once again, no class member objected.

This multi-channel notice program was the best notice practicable under the circumstances. Federal Rule 23 expressly provides for notice by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Indeed, mail notice combined with a website for further information is commonly approved in class settlements. *See*, *e.g.*, *Greco v. Ginn Dev. Co.*, 635 Fed. Appx. 628, 634 (11th Cir. Dec. 2, 2015) ("all material facts were available to class members because a full copy of the settlement agreement, and the release, were available on a website referenced in the Notice."); *see also*, *e.g.*, *Roll v. Enhanced Recovery Co., LLC*, 2021 U.S. Dist. LEXIS 217955 at *17-18 (M.D. Fla. Nov. 10, 2021); *Taylor v. Citizens Telecom Servs. Co.*, 2021 U.S. Dist. LEXIS 230611 at *4-5 (M.D. Fla. Sept. 10, 2021); *Cooper v. Nelnet, Inc.*, 14-

9

cv-00314 (M.D. Fla. Feb. 26, 2015) at ECF 72, ¶10. Accordingly, the notice program

approved by the Court satisfied Rule 23 and Due Process.

## III.  THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

A settlement should be approved when it is fair, reasonable and adequate, and

not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.

1984). This determination generally requires consideration of the following factors (the

*Bennett* factors):

> (1) likelihood of success at trial; (2) range of possible recovery; (3) point
> on or below the range of possible recovery at which a settlement is fair,
> adequate and reasonable; (4) complexity, expense and duration of
> litigation; (5) substance and amount of opposition to the settlement; and
> (6) stage of proceedings at which the settlement was achieved.

*In re Equifax Customer Data Breach Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir.

2021) (quoting *Bennett*, 737 F.2d at 986).

In making this determination, the court "should always review the proposed

settlement in light of the strong judicial policy that favors settlements." *Behrens v.

Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th

Cir. 1990); *see also In re Equifax*, 999 F.3d at 1273 ("The law favors settlement,

particularly in class actions and other complex cases …")). This is because, with a

settlement, class members are ensured a benefit as opposed to the "mere possibility of

recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D.

297, 306 (N.D. Ga. 1993); *see also Scott v. Util. Partners of Am., LLC*, 2017 U.S.

Dist. LEXIS 17348 at *8 (D. Kan. Feb. 6, 2017) ("the value of immediate recovery would likely outweigh the mere possibility of recovery after protracted litigation.").

Thus, although approval of a class settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the parties. *See Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1998) ("affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"), *aff'd*, 893 F.2d 347 (11th Cir. 1989). In other words, "[a] trial judge ought not try the case during a settlement hearing and should be hesitant to substitute his or her own judgment for that of counsel." *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)

Under the foregoing principles, the instant Settlement easily qualifies as fair, reasonable and adequate, and not the product of collusion.

**A. The Settlement Is the Product of Arms-Length Negotiations.**

Plainly this Settlement is not collusive. The Settlement only came about after years of hotly-contested litigation, including numerous discovery motions, evidentiary hearings with experts and months of negotiations. (*Appendix 3* (Keogh Decl.) at ¶10-¶18). The fact the parties only reached a deal after taking part in a full-day mediation conducted by an experienced, professional mediator confirms the absence of collusion. *See In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (settlement's reasonableness supported by fact it was reached with the assistance of a qualified mediator); *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D.

11

Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion.").

Finally, there is no clear sailing agreement regarding the proposed attorneys' fee or class representative service awards. In short, the "absence of collusion" factor weighs in favor of approving the Settlement.

### B. The Results Compared to the Possible Recovery, and Likelihood of Success, Favor Approval of the Settlement.

As noted above, under the Settlement each class member claimant will receive $120.00 in cash. This favorably compares to the recovery of $500 the TCPA provides per violation (up to treble if the violation is willful). 47 U.S.C. §227(b)(3)(B), (C).

The monetary relief secured on behalf of the Settlement Class is substantial in light of the fact that it came after this Court denied certification in a substantially similar TCPA class action in *Morgan v Adventist Health System et al.*, 6:18-cv-01342-WWB-DCI (M.D. Fl. 2020). Although Plaintiff does not concede *Morgan* is applicable, if the Court would have applied *Morgan* to this case, it is likely the Court would have denied certification and the class would receive nothing.

This result also favorably compares to other TCPA settlements granted final approval (including in this District), many of which paid far less relief per class member and/or provided gift cards instead of cash, or provided no monetary relief at

all (only equitable relief), and had claim rates far lower than the claim rate here.[4]

On top of that, the possibility of a better recovery at trial was anything but certain. Denial of class certification would result in no recovery for the class, and certification was far from guaranteed in light of *Morgan* as well as the Court might have granted Defendants' motion for summary judgment.

Against these uncertainties, the Settlement guarantees the class substantial cash relief. *See In re Equifax*, 999 F.3d at 1257 ("Absent the settlement, the class action could have faced serious hurdles to recovery, and now the class is entitled to significant settlement benefits that may not have even been achieved at trial."); *Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 at *38 (S.D. Fla. Nov. 5, 2015) ("Rather than facing more years of costly and uncertain litigation, [the] Settlement Class

---

[4] *See, e.g., James v. JPMorgan Chase Bank, N.A.*, 2017 U.S. Dist. LEXIS 91448 at *3 (M.D. Fla. June 5, 2017) (approving settlement providing $81 per class member, noting that "equals or exceeds the recovery in a typical TCPA class action."); *Wojcik v. Buffalo Bills, Inc.*, No. 8:12-cv-2414-T-23TBM (M.D. Fla. Aug. 25, 2014) at Dkt. 77, p.5 (class claimants received a $57.50-$75.00 gift card), *approved* at Dkt. 79; *In re Enhanced Recovery*, 13-md-2398-Orl-37GJK (M.D. Fla. Jul. 29, 2014) at Dkt. 123, p.1 (class only received injunctive relief), *approved* at Dkt. 125; *Markos v. Wells Fargo Bank*, 2017 U.S. Dist. LEXIS 17546 at *11 (N.D. Ga. Jan. 30, 2017) (finding $24 per class member to be "an excellent result"); *Hashw v. Dep't Stores Nat'l Bank,* 182 F.Supp.3d 935, 944 (D. Minn. 2016) (approving a TCPA settlement that provided $33.20 per claimant); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (settlement approved where each claimant would receive $34.60); *Malta v. Fed. Home Loan Mortg.*, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (approving $17.1 million settlement for 5,887,508 class members); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement for 6,079,411 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-1211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement for approximately 18.1 million class members).

Members will receive an immediate cash benefit…") (brackets added). Thus, the results and risks favor approval.

### C. The Stage of the Proceedings, and the Complexity, Length, and Expense of Further Litigation, Favor Approval.

The Settlement is also fair, reasonable, and adequate because it is the product of full knowledge of the material facts by highly competent counsel with extensive experience litigating TCPA class actions. *See Ulbrich v. GMAC Mortg., LLC*, 2013 U.S. Dist. LEXIS 188087 at *4 (S.D. Fla. May 10, 2013) (settlement merited approval in part because it was negotiated "by highly capable and experienced counsel, with full knowledge of the facts, law, and risks inherent in litigating the Action …"); *see also Poertner v. Gillette Co.*, 2014 U.S. Dist. LEXIS 116616 at *13, n.8 (M.D. Fla. Aug. 21, 2014) (expressly noting counsel's class action experience), *aff'd* 618 Fed. Appx. 624 (11th Cir. July 16, 2015); *see also Appendix 3* (Keogh Decl.) at ¶4-¶5, and ¶16-¶23 (detailing Class Counsel's extensive class action and TCPA experience).

As noted above, the discovery including expert discovery has been extensive. Thus, counsel had ample information to evaluate merits of the class members' claims, the nature and strength of Defendants' defenses, and the chances of success and potential recovery. (*See Appendix 3* (Keogh Decl.) at ¶10-18).

Moreover, without the Settlement, Plaintiff, the Class and the courts still faced a considerable amount of time-consuming, complex, and expensive litigation. This includes deciding Plaintiff's pending class certification motion, deciding Defendants' pending summary judgment motion, presiding over a trial, and briefing and deciding

14

appeals of the class certification and merits decisions. These circumstances also favor approval. *See In re Equifax*, 999 F.3d at 1273 ("The law favors settlement … where substantial resources can be conserved by avoiding lengthy trials and appeals.").

### D. The Lack of Opposition to the Settlement and Opinions of Competent Counsel Favor Approval.

As noted above, this all-cash Settlement provides a substantial recovery and, given the difficulties and risk of failing to clear all hurdles necessary to achieve a successful outcome through litigation (which might not exceed this Settlement even if the class were to win), it is Class Counsel's opinion this settlement is plainly in the class's best interests. (*See Appendix 3* (Keogh Decl.) at ¶19; *Appendix 4* (Declaration of William Howard) at ¶14.

The class's positive reaction to the Settlement confirms this evaluation. Again, over 6,000 class members filed claims,[5] no class member objected to any portion of the Settlement or request for fees and only one class member opted out. The absence of objections or even a "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma*, 406 F.Supp.2d at 1324. Given the foregoing, there should be no doubt the Settlement qualifies as fair, reasonable, and adequate, and merits final approval.

---

[5] *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (TCPA settlement approved with 230,000 valid claims from 9.2 million class members, a 2.5% claim rate); *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780 (N.D. Ill Nov. 6, 2013) at Dkt. 73, ¶10 and Dkt. 69, p.1 (TCPA settlement approved with 4,696 claims from 238,368 potential class members, a 1.97% claim rate).

## IV.    THERE IS NO OBJECTION TO THE PROPOSED ATTORNEY FEE, EXPENSE, OR CLASS REPRESENTATIVE SERVICE AWARDS

Contemporaneous with the issuance of notice to the Class, Plaintiff moved for an award of attorneys' fees of $500,000, which equal to one-third of the Settlement Fund, reimbursement of out-of-pocket expenses in the amount of $23,500.40 and a class representative service award in the amount of $20,000. (See Dkt. 284 (Plaintiff's Motion for Award of Attorneys' Fees and Expenses, and Class Representative Service Award ("Fee Motion")) at p.2).

The notice to the class expressly informed class members the fee sought would be up to one third of the settlement fund, not to exceed $500,000, plus reasonable expenses. *See https://www.departmentstorestcpasettlement.com/page/faq* (Last visited March 14, 2022)("How will class counsel be paid"). Plus, a copy of the Fee Motion was posted on the Settlement website for class members to review throughout the notice period. *See id.*

No class member objected to the proposed attorneys' fee, expense, or service awards. As demonstrated in the Fee Motion, the proposed fee and expense awards are well supported by law and fact because:

(1) When an attorney's efforts result in the creation of a common fund for the benefit of a class, the law entitles the attorney to a share of the fund as their fee, and the Eleventh Circuit requires the fee award be determined as a percentage of the fund. *In re Equifax*, 999 F.3d at 1278 (citing *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991)); and *Camden I*, 946 F.2d at 774 ("Attorneys in a class action in

16

which a common fund is created are entitled to compensation for their services from the common fund …")). This is fair and equitable because, "[u]nless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980).

(2) The Eleventh Circuit allows percentage fee awards as high as 50% of the fund. *Camden I*, 946 F.2d at 774-75 ("an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded.").

(3) In addition to being well under *Camden I*'s 50% threshold, the reasonableness of the proposed one-third percentage award here is demonstrated by fact it is equal the percentage fee awards in other class action cases granted approval in this Circuit,[6] it is equal to or less than the percentage fee awards granted approval in in TCPA class cases in particular,[7] and it is the same award this Court approved in this district. *See Iverson*

---

[6] *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1195 (11th Cir. 2019) (overruling objections to 33% fee award ($2.1 million) from a $6.3 million settlement) (vacated on other grounds); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming a 33% fee award ($13.33 million) from a $40 million settlement)*; Seghroughni v. Advantus Rest., Inc.*, 2015 U.S. Dist. LEXIS 64602 at *2 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable…"); *Cabot E. Broward 2 LLC v. Cabot*, 2018 U.S. Dist. LEXIS 192706 at *20 (S.D. Fla. Nov. 9, 2018) (citing "19 cases from this Circuit in which attorneys' fees amounting to 33% or more of a settlement fund were awarded," including settlements of $310 million, $77.5 million, $75 million, $40 million, and $25 million); *see also Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786 at *13 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement.").

[7] *See Kolinek*, 311 F.R.D. at 502-503 (granting 36% fee award in TCPA case); *In re Capital One*, 80 F. Supp. 3d at 807 (granting 36% fee award from first $10 million of the settlement in a TCPA case); *Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill.

*v Advanced Disposal Services et. al.* 3:18-CV-0867 (M.D. Fl. March 1 2022); *Cook*, 16-cv-

673-BRD-JRK, Dkt. 210 at ¶16(h) (M.D. Fla. Jun. 5, 2020) (awarding Class Counsel

one-third of $3.5 million TCPA settlement, plus expenses).

(4) The proposed fee award's reasonableness is also confirmed by the results

achieved, the difficulties faced, the skill and effort needed, the abilities of counsel, and

awards in similar cases. *See Muransky*, 922 F.3d at 1195 (citing *Camden I*, 946 F.2d at

775) (time, labor, and skill required, novelty and difficulty of issues, results obtained,

whether the fee is contingent, customary fee and awards in similar cases, and the

experience and ability of the attorneys, are factors to consider in determining fee

award)). Specifically, Counsel achieved a settlement that will pay class members

$120.00 each, well-exceeding many other TCPA settlements granted approval on a

per-class member basis (including settlements approved in this District).[8]

---

Jan. 16, 2014) at Dkt. 63, ¶17 (granting 36.3% fee and expense award in TCPA case);
*Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill. Dec. 23, 2013) at Dkt. 79, p.10, and
Dkt. 87, ¶14 (granting one-third percentage fee award in TCPA case); *Martin v. JTH
Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 23, 2015) at Dkt. 86 (same).
[8] *See, e.g.*, *Wojcik*, No. 8:12-cv-2414-T-23TBM at Dkt. 77, p.5 (class claimants received
a $57.50-$75.00 gift card), *approved* at Dkt. 79; *In re Enhanced Recovery*, 13-md-2398-
Orl-37GJK at Dkt. 123, p.1 (class only received injunctive relief), *approved* at Dkt. 125;
*Markos*, 2017 U.S. Dist. LEXIS 17546 at *11 (finding $24 per class member in TCPA
case to be "an excellent result"); *Hashw,* 182 F.Supp.3d at 944 (approving a TCPA
settlement that provided $33.20 per claimant); *In re Capital One TCPA Litig.*, 80 F. Supp.
3d at 790 (settlement approved where each claimant would receive $34.60); *Malta*,
2013 U.S. Dist. LEXIS 15731 (approving $17.1 million settlement for 5,887,508 class
members); *Adams,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (approving $9 million
settlement for 6,079,411 class members); *Palmer*, No. 09-cv-01211, Dkt. Nos. 84 & 91
(approving $5.5 million settlement for approximately 18.1 million class members).

Likewise, the case required substantial effort and skill, and Class Counsel faced considerable difficulties as noted above. In other words, although Class Counsel achieved a good result here, that outcome was anything but guaranteed.

(5) Relatedly, the proposed fee award's reasonableness is confirmed by the fact that Class Counsel's ability to recover any fees for their work or the out-of-pocket expenses they put into the case was purely contingent on a successful outcome. This is important because:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high.

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (citations omitted). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d at 1364. Plus, the risk was enhanced here because the TCPA does not contain a fee-shifting provision or other mechanism to allow counsel to recover their fees, and because Class Counsel were up against two well-heeled defendants with sophisticated class action defense counsel. Accordingly, "[c]ases recognize that attorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award." *Pinto*, 513 F.Supp.2d at 1339 (collecting cases).[9]

---

[9] Class actions are inherently risky. Although Class Counsel have brought many successful class actions, in others they only recovered nominal amounts, including TCPA cases. *See, e.g.*, *Morgan* as well as *Flaum v. Buth-Na-Bodhaige, Inc.*, 15-civ-62695-WJZ, Dkt. 67 (S.D. Fla.) (although Class Counsel filed their case first, the class claims were settled by a later-filed, competing class action that only recovered gift cards, and

Simply put, "[f]ew lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to potentially advance substantial amounts of attorney time and out-of-pocket expenses and risk getting nothing; especially given … the inherent possibility of failing to certify the class, the risk of losing on summary judgment or at trial, [and] the risk of losing any victory on appeal." *Flaum v. Doctor's Assocs.*, 2019 U.S. Dist. LEXIS 40626 at *15 (S.D. Fla. Mar. 11, 2019). Thus, in addition to the fact there is no objection from the class, the proposed fee and expense[10] awards are well earned. They should be approved.

Finally, the proposed $20,000 class representative service award is reasonable to reward Plaintiff for the substantial benefit Ms. Clark and subsequently Ms. Mercer

---

Plaintiff's counsel received nothing); *Kirchein v. Pet Supermarket, Inc.*, 297 F.Supp.3d 1354, 1355-56 (S.D. Fla. 2018) (defendant successfully moved to dismiss case for lack of standing *after* agreeing to settlement and after settlement had been granted preliminary approval). Likewise, in another case, the class was decertified two years after certification, and after notice had been sent to the Class, which resulted in Class Counsel incurring hundreds of thousands of dollars in notice costs, plus the additional cost to send notice of the decertification. *See Johnson v Yahoo!, Inc.*, 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) (order decertifying class after notice). Similarly, in *Braver v Northstar Alarm Serv.*, 17-cv-00383-F (W.D. Okla.), a co-defendant filed for bankruptcy after class certification, notice to class, and judgment, and in *Kinnamon v. Ditech Financial, LLC.*, 16-646 JAR, Dkt. 218 (E.D. Mo. Dec. 2, 2019), the case was dismissed due to bankruptcy after class certification and summary judgment were fully briefed.

[10] As explained in the fee motion, the expenses were reasonably incurred because they largely consist of charges for experts, depositions, and the mediation, none are for overhead items like photocopying, research, telephone, meals, and all were reasonably necessary to prosecute the case. *See* Dkt. 157 (Fee Motion) at pp. 21-22. and, *e.g.*, *Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16(h) (M.D. Fla. Jun. 5, 2020) (granting Class Counsel a one-third percentage fee award plus $57,903.83 in expenses in a TCPA class case).

provided to the Class and efforts assisting Class Counsel. Courts routinely approve service awards equal to or exceeding this request when the plaintiffs have done a lot less. *See Muransky*, 922 F.3d at 1196 ("Many circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23.") (vacated on other grounds); *Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶17 (M.D. Fla. Jun. 5, 2020) (Davis, J.) (Granting $20,000 service award in TCPA case).[11]

The class raised no objection to the proposed service award. Thus, as other courts in this District have done, the proposed award should be approved contingent on whether the Eleventh Circuit decides to reconsider or rehear the panel opinion against such awards in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), mandate withheld, No. 18-12344, (Nov. 9, 2020). *See Mosley v. Lozano Ins. Adjusters*, 2021 U.S. Dist. LEXIS 15971 at *13 (M.D. Fla. Jan. 11, 2021) (recommending deferring ruling on the service award pending *NPAS*), *R&R adopted*, 2021 U.S. Dist. LEXIS 15726 at *2 (M.D. Fla. Jan. 28, 2021); Thus Plaintiff would request she be

---

[11] *See also*, *e.g.*, *Cooper v. NelNet, Inc.*, 14-cv-314-Orl-37DAB, Dkt. 85 at p.5, ¶11 (M.D. Fla. Aug. 4, 2015) (approving a $25,000 service award in TCPA case); *Cabot E. Broward 2 LLC*, 2018 U.S. Dist. LEXIS 192706 at *28-29 (S.D. Fla. Nov. 9, 2018) (approving $50,000 per plaintiff, noting "[t]ogether, the requested awards total $100,000, or 0.1% the amount recovered for the Class, which is well within the range of incentive awards in other cases.") (collecting cases approving service awards ranging from $15,000 to $1.76 million); *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285, Dkt. 93 at p.6, ¶18 (N.D. Ill. Oct. 21, 2015) (approving $25,000 service award in TCPA case); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, Dkt. 243 at ¶20 (N.D. Ill. Jun. 21, 2013) (granting $30,000 service awards in TCPA class settlement); *see also Gevaerts*, 2015 U.S. Dist. LEXIS 150354 at *26 ($10,000 incentive awards to multiple plaintiffs) (*citing Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff).

granted the service award contingent upon *Johnson* being reversed and, if it is not reversed, the amount awarded would be added to the Settlement Fund for the class as provided in the settlement agreement.

## V.   DEFENDANTS DO NOT OBJECT TO THE RELIEF SOUGHT

Defendants have agreed to the terms of the Settlement, and do not oppose this motion.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests the Court (1) grant the Settlement final approval; (2) grant Class Counsel's request for an award of attorneys' fees equal to one-third of the Settlement Fund ($500,00), plus $23,500.40 in out-of-pocket expenses they incurred litigating the case for the class; (3) conditionally grant Plaintiff a class representative service award in the amount of $20,000 pending the Eleventh Circuit's final resolution of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020); and (4) grant any additional relief deemed just.

For the Court's convenience, Plaintiff hereby submits a proposed Final Approval Order attached as *Appendix 5*.

## Local Rule 3.01(g) Certification

Plaintiff certifies he conferred with Defendants and Defendants do not agree with the entire contents of this motion but do not oppose the relief sought.

Respectfully Submitted,

*s/Keith J. Keogh*
Keith J. Keogh (FBN: 0126335)
Keogh Law, Ltd.

22

55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.726.1092 (Main)
Keith@KeoghLaw.com

*s/ William Peerce Howard*
William Peerce Howard
Florida Bar No. 0103330
Billy@Theconsumerproectionfirm.com
Amanda J. Allen
Florida Bar No. 098288
Amanda@Theconsumerproectionfirm.com
The Consumer Protection Firm, PLLC
401 E. Jackson Street, Suite 2340
Tampa, FL. 33602
Telephone: (813) 500-1500

*Class Counsel*